TENNY AND McKENZIE v. MULVANEY AND BEMIS.

Upon an issue as to the merchantable quality of saw-logs, the testimony of witness that they saw a portion of the lumber manufactured therefrom, and that all of such portion was "good merchantable lumber," was competent evidence tending to prove that the logs were merchantable. Testimony that the saw-logs in question were such as were usually manufactured into lumber in the locality where the contract to deliver " good, sound, merchantable logs" for the purpose of being converted into lumber, was to be executed, and that a portion of them were actually manufactured into lumber there, by the parties to whom such logs were to be delivered under such contract, was admissible for the same purpose,   For the same reason the testimony of a witness that he hauled and put into the water, where the logs were to be delivered, a certain portion of them, which were actually received and sawed into lumber by the parties sought to be charged for their stipulated price, under said contract, was also competent evidence on behalf of the parties who under the contract were to deliver " good, sound, merchantable logs," even though the description given by the witness in the same answer that " the logs were average logs, for that timber," should be deemed at variance with the description of the quality of logs to be delivered in the contract.

Where the defendants, in an action on such contract, admit the delivery of 35,000 feet of logs of the stipulated quality, but deny the delivery of any greater quantity, and the plaintiffs claim to have delivered a much larger quantity, and the bill of exceptions on appeal, fails to show affirmatively that the testimony of a witness, on behalf of the plaintiffs, tending to prove the merchantable quality of a specified portion of the logs in controversy, referred to the portion admitted by defendants, and as to the quality of which there was no issue, the appellate court, in support of the correctness of the rulings of the court below, admitting such testimony, will presume that it referred to the remaining logs, the quality of which was in issue, and hold that it was therefore relevant and admissible.

The same presumption will be indulged in reference to the preliminary proof of the contents, correctness and loss of an original memorandum, to justify the admission of a copy as secondary evidence. Thus the original in this case, being merely a private memorandum of the measurement of the logs in question, made on behalf of the plaintiffs in the course of their own business, solely, and not at the time of, or connected with, any delivery to the defendants, nor offered to prove delivery, but only to show the quantity cut by the plaintiffs under their contract, to establish their claim for damages for the alleged breach thereof by the defendants, by refusing to receive and scale the logs so cut, and otherwise preventing the plaintiffs from performing their portion of the contract, by delivering the quantity of logs stipulated for, its correctness must have been proven by the parties who made it, or others having knowledge of the facts, or have been admitted at the trial by the defendants as well as its loss, or other circumstances excusing its non-production, before secondary evidence of its contents by copy or otherwise could properly have been admitted. But the bill of exceptions not disclosing the absence of such preliminary proof at the trial, it will be presumed, in support of the correctness of the rulings of the court below, to have been made at the proper time.

A copy of such original memorandum, made by a witness by entering correctly on a separate sheet of paper, the items in the original, as read off to him by another person for that purpose, a short time after the original was made, the witness himself having made the original either alone or in connection with another party, and testifying, in effect, that the copy was a true and correct copy of the original to the best of his knowledge and belief, and it not appearing that the testimony of the person who read off the items from the original could have been procured at the trial by the plaintiff, or that other or better evidence was in their power, was sufficiently proven to justify its submission to the jury, although the witness testified that he did not make any comparison of the copy with the original with his own eyes.

The plaintiffs alleging damages covering the net profits they would have realized on all the logs they could and would have delivered under their contract, in addition to the stipulated price for those actually delivered, and defendants having put such damage in issue by their answer, testimony showing the existence of a sufficient quantity of suitable timber, within the limits where the logs were to be procured by the terms of the contract, to supply the additional quantity of logs, was relevant to such issue, and properly admitted.

Testimony offered by defendants to show the relative cost of procuring logs within 300 yards of a certain creek, and in a certain canyon where the contract provided that the plaintiffs should procure 400,000 feet of the logs which they were to furnish the defendants, was properly rejected by the court below, there being nothing in the pleadings or bill of exceptions, showing any issue as to the relative cost of procuring logs in the two localities.

Under a count in the complaint of work and labor performed for the defendants by the plaintiffs, at the special instance and request of the former, of the reasonable value of $32.50, without specifying the nature or setting forth the items of such service, it was not competent for the plaintiffs to offer testimony to prove that ten dollars of such charge was for work and labor performed by them, in removing a drift from a certain creek, which defendants had verbally agreed to remove, but had failed to do. If recoverable at all, it was in the nature of damage for breach of the verbal agreement, and must have been so alleged. But as the extent of the injury to defendants arising from the admission of the testimony was inconsiderable: *Held*, That the judgment ought not to be reversed if respondents will release the said amount and pay the costs of appeal.

Judgment affirmed conditionally.

APPEAL from Marion.   The facts are stated in the opinion.

*Bonham & Ramsey, and W. R. Willis,* for appellant.

*John Kelsay and N. B. Knight,* for respondent.

By the Court, WATSON, J.:

This case has been here twice before, on appeal from the judgments of the circuit court for Douglas county, and a new trial awarded in each instance.   (8 Or., 129 and 513.)   Upon a change of venue to Marion county, a third trial by jury has been had, and the respondents have for the third time received judgment against the appellants upon their demand, and the defeated parties have again brought the case here by appeal, and ask to have the judgment reversed for errors alleged to

have been committed by the circuit court for Marion county in admitting certain evidence on the trial, on behalf of the respondents. The case itself is an action for damages for alleged breaches of a written contract, which is in these words:

"This article of agreement made and entered into this 29th day of May, 1878, between N. E. Mulvaney and E. C. Bemis, of firm name of Mulvaney & Bemis, of the first part, and H. O. Tenny and Neil McKenzie, of the firm name of Tenny & McKenzie, parties of the second part. Parties of the first part agree to pay parties of the second part, four dollars and twenty-five cents per thousand feet, for good, sound merchantable logs, delivered at the boom in Pass Creek; also agree to furnish timber for logs, not to exceed a mile from the bank of the creek, to scale each one hundred thousand feet that is in floating water. The parties of the second part agree to furnish logs to the parties of the first part, one million feet with privilege of furnishing as much more as can be put in the creek, in the year, from this date, in the boom in Pass Creek; the parties of the second part shall keep logs on hand for the parties of the first part, so that the mill shall not be shut down during the year, and are to cut four thousand feet, more or less, from Rickey Canyon."

MULVANEY & BEMIS,<br>TENNY & McKENZIE.

And also upon an account for work and labor performed, declared upon as follows: "And the plaintiffs, for a separate and further cause of action, allege that the plaintiffs, on or about the months of June and July, 1878, in the precinct of Drain, in Douglas county, Oregon, and at the special instance and request of the defendants, performed work and labor with men and teams, for the use and benefit of said defendants, and that said work and labor was and is necessarily worth the sum of thirty-two dollars and fifty cents. That no part of the same has been paid, and the same is now due and owing, and unpaid, from the defendants to the plaintiffs."

The respondents claim in their complaint to have delivered

to the appellants, under their written contract, set out above, 165,169 feet of good, sound, merchantable logs in the boom, and 139,654 feet in floating water, above the boom, and had cut a large quantity of logs and were proceeding to complete their said agreement, when, about the 6th day of August, 1878, the appellants, without the consent of the respondents, violated their obligations under said agreement, and prevented the respondents from proceeding further towards its fulfilment on their part.

The appellants admit in their answer, the delivery of 35,000 feet of good, sound, merchantable logs in the boom, and 95,000 feet in the floating water above, and deny any greater quantity, and deny the rest of said allegation, and aver that respondents put into the boom, and in the water above, large amounts of unsound, unmerchantable logs, and prevented the appellants from getting logs to keep their mill running, etc., all of which is put in issue by the reply of the respondents.

Upon the trial the following question and answer, in the deposition of E. A. Estes, a witness for the respondents, was admitted by the court, and read to the jury, on behalf of the respondents, over the objection of the appellants that it was immaterial and irrelevant.

Ques. 6. "What quality was the lumber that you know them (referring to the defendants) to have manufactured from their logs? (referring to logs cut by plaintiffs in 1878 for defendants)."

Ans. "Well, I bought some of the lumber, and I considered it good, merchantable lumber; at least I paid full price for it —eleven dollars per thousand for rough, and twenty and one-half for dressed, at the mill."

This ruling of the court was duly excepted to, and is the first error assigned here by the appellants. The bill of exceptions failing to show that the lumber spoken of by the witness was manufactured from the 35,000 feet of logs which appellants had admitted in their answer to have been delivered

by respondents, and to have been of the quality stipulated for in the written agreement, and as to the quality of which there was no issue in the pleadings, we must presume in favor of the correctness of the ruling below, admitting this testimony, that in connection with admissions, or other proofs made on the trial, it was applicable to the issue in the pleadings as to the quality of the remainder of the 165,169 feet which the respondents claimed to have delivered, of the stipulated quality, after deducting the 35,000 feet admitted by the appellants. "Error must be affirmatively shown by the record; it will not be presumed." (*Dolph* v. *Barney*, 5 Or., 191.) For this reason the exception cannot be sustained.

The next exception taken by the appellants was to the ruling of the court admitting, over their objection for irrelevancy and immateriality, the following question and answer in the deposition of W. A. Perkins, on behalf of the respondents.

Ques. 7. "Were the logs which you scaled (referring to the logs which plaintiffs claimed they had cut for defendants, under their contract, as set out in the complaint) of the character of timber from which lumber is manufactured in that locality?" (referring to the locality of defendant's saw-mill.)"

Ans. "I am of opinion that they do manufacture lumber of such logs as we scaled there. I believe some of them were manufactured into lumber, though I did not see them."

This evidence appears to refer to all the logs which the respondents claim to have cut and delivered under their contract with the appellants, and was properly admitted unless not tending to prove the delivery of logs of the quality stipulated for in the written contract between the parties. The words used in that contract, to denote the quality of logs to be delivered, are " good, sound, merchantable logs." Evidently these descriptive words should be construed together, and in view of the use to be made of the logs which the written instrument shows to have been in contemplation of both parties when they executed it, and with reference to

the place where the contract was to be performed. (*Tenny* v. *Mulvaney*, 8 Or., 517.)

A log might be "good, sound and merchantable" for many purposes, and yet not fit for being manufactured into lumber, and the same log might, owing to a difference in the settled usages of the business in two different localities, be deemed a "merchantable" log in one and not in the other. "Merchantable" logs, then, in reference to the business of manufacturing lumber in any particular locality, are such logs as are ordinarily used for that purpose at that particular place, and if the usage of the business in that locality requires the logs ordinarily used to be "good and sound," then the word "merchantable" would include the particular meaning of each, and render their employment of no utility in any such contract.

But whatever distinctions should properly be made as to the respective meanings of the words used in this instance, we think it was clearly competent to show by the witness that the logs in controversy were of the quality usually manufactured into lumber in that locality, to prove that they were "merchantable" logs. And this we understand to be the tendency of his testimony, as well as the object of its introduction. This was one step in the proof, and if it afforded no presumption that the logs were "good and sound," as well as "merchantable," it afforded no inference to the contrary, most assuredly, nor does the bill of exceptions disclose any ground for such an inference. This exception must therefore be overruled also.

The third ground of objection insisted upon here is to the ruling of the court below, admitting in evidence, on behalf of the respondents, a certain paper, which the witness Perkins claimed to be a copy of the list of measurements of said logs, which original list had been made by himself and one Wm. Morris in the employment of the respondents, some time in the year 1878. Perkins' testimony, as set out in the bill of exceptions, shows that Morris and himself measured the logs

as they lay in the creek and in the woods, and made a memorandum of the measurements, showing the dimensions of the logs, in a book called a " scale-book," at the time. How they proceeded in doing this, does not appear from the bill of exceptions, and we cannot look outside of what it contains, and into the transcript of the depositions which have been brought up, to ascertain how they did proceed. We can only draw the conclusion from what does appear in the bill of exceptions, that the entries made in the " scale-book " of the measurement of the logs, at the time, by the witness Perkins and Wm. Morris, was merely a private memorandum, made exclusively in the course of the respondents' own business, disconnected from their transactions with other parties, and not standing upon the same ground as entries in the course of official business, or entries made in the usual course of business transactions with other parties, is inadmissible to prove its own contents after proper authentication, as a book of original entries, but admissible only to refresh the memory of witnesses, who made the measurements and entries, or had knowledge of them, at the time they were made. (See *Price* v. *The Earl of Torrington*, 1 Smith's Lead. Cases, 535. where the various cases involving the question are ably reviewed.)

But if these witnesses had been produced at the trial, and had testified that the measurements were correctly made, and truly entered in the ". scale-book," and had shown by their testimony at the trial sufficient recollection of the previous transaction to qualify them to so testify, although unable then to testify from memory alone to the correctness of the particular items, so ascertained and entered, without reference to the " scale-book," the respondents would have been entitled to introduce the " scale-book " itself in evidence, in connection with such testimony. This we deem to be the rule established by the best considered authorities as the prevailing doctrine on the subject in the United States, and at the same time the most just and practical solution of the matter that

has been advanced.  (*Russell* v. *The Hudson River Railroad Co.*, 17 N. Y., 134.)

And if such proof had been in respect to the original memorandum, and it had been lost, or other circumstances shown excusing its production at the trial, we can perceive no valid objection to the admission of secondary evidence as to its contents—either parol or a duly authenticated copy. (*Prince, Administratrix* v. *Smith*, 4 Mass., 454; *Wallace* v. *Goodall*, 18 N. H., 455; *Holmes* v. *Marden*, 12 Pick., 169.)

Now, the objection of the appellants to the introduction of the copy produced by the witness Perkins, was that it had not been " identified as the list that was made originally, and as incompetent and irrelevant."   Considering that this objection not only went to its secondary character as evidence, but also presented the question whether the necessary preliminary proofs already indicated as essential to its admission in evidence, had been made, still we are convinced, from a careful study of the bill of exceptions, that the issues thus made are narrowed down in this court to the single question as to the sufficiency of the proof produced by the respondents at the trial, to show that the paper claimed to be a copy was in fact a correct copy of the original memorandum of the measurement in the " scale-book."

It does not appear from the bill of exceptions that Wm. Morris was not called as a witness, or that the correctness of the measurements and entries in the " scale-book " was not satisfactorily proven by either Morris or Perkins, or admitted on the trial in accordance with the views expressed above; or that the testimony of Perkins set out in the bill of exceptions, and tending to show the loss of the original " scale-book" in order to justify the introduction of the copy, which, standing alone, it must be confessed seems very slight and hardly sufficient for such a purpose, was the only proof of such loss that was made at the trial.

The statement in the bill of exceptions in regard to the matter, and immediately following the portions of Perkins'

deposition copied therein, is to the effect only that such por-
tions of his deposition contain all the evidence given upon
the trial touching his knowledge of the quality of the saw-
logs, or of lumber manufactured therefrom, as well as all of
the evidence given on the trial tending to identify or authen-
ticate " Exhibit B " (the copy now under consideration) as a
correct copy of the original memorandum in the " scale-book."

. It is plain that all the proof we have indicated as being
necessary to justify the admission of such a memorandum in
evidence, as well as all necessary proof of loss of the original,
or of other circumstances dispensing with the necessity of
producing the original memorandum, before offering secondary
evidence of its contents, by copy or otherwise, may have been
made, without in any manner conflicting with anything con-
tained in the bill of exceptions, and we are bound under such
circumstances to presume that it was made upon the principle
already announced in passing upon the first exception.

The portion of Perkins' deposition referred to above shows
that he assisted Morris in making the measurement of logs
and original memorandum thereof; that soon after that time
(the exact period is not stated by the witness), he made the
copy under consideration in the following manner: Some one,
whom the witness was unable to remember at the trial, called
off the particular items of measurement, in the original mem-
orandum, and the witness set them down as called off in the
copy.　These entries were only of the dimensions of the logs
as ascertained by the measurement.　The witness, after copying
the dimensions as called off from the original, made a calcu-
lation of the number of feet which each log contained,
according to such dimensions, upon a separate sheet of paper,
and transcribed the aggregate amount on the copy.　He
further testified in answer to question 12 that this copy con-
tained a correct scale of the measurement made by Morris and
himself of the logs in controversy, according to the "scale-
book" by which he and the other person who called off the
entries as above stated, ascertained the result.　In answer to

question 13 he testified that to the best of his knowledge and belief, the dimension of each log, as shown by the copy, was the same as it was entered in the original memorandum.   In answer to cross-questions 12 and 13 the witness stated that he never compared the letters and figures on the copy with those on the original memorandum with his own eyes, but only by having them read from the original and entering them in the copy as already explained.

This was all the evidence that was given on the trial, to establish the correctness of the copy.   Was it sufficiently proven to justify its submission to the jury?   It does not appear from the bill of exceptions that the testimony of the person who read off the items in the original memorandum to Perkins, when he copied them, could have been produced at the trial by the respondents; or that any better or additional evidence upon the question was in their power.   We are of the opinion that the copy was sufficiently authenticated by the testimony of Perkins to justify its admission under the circumstances.   In the absence of any testimony to the contrary, his testimony would justify the jury in finding the copy to be a correct transcript of the original memorandum, and in returning their verdict accordingly.

That such testimony is competent to prove a copy and authorize the admission as secondary evidence, in a case where the original cannot or need not be produced, there can be no doubt.   In addition to cases cited *supra*, see *Perkins* v. *Crow*, 19 Ill., 626; and *Edwards* v. *Noyes*, 65, N. Y., 125.

The case of *Thomas' Garnishee* v. *Price*, 30 Maryland, 483, cited by appellants, is not in point.   This decision was placed on the ground that Hancock, the witness who, like Perkins, in the case before us, made copy offered in evidence, exclusively from hearing the original—a mere private memorandum like the present—had no knowledge of the correctness or incorrectness of the items in the original memorandum, and that a "mere copy" of such would not be admissible as evidence.

The court did not decide that the copy had not been suffi-

ciently proven to be a correct copy of the original, but in effect, as we view the doctrine, that the original itself, not being a book of original entries, would not have been admissible if it had been produced, and only authenticated as such books are required to be, to prove its own contents, and that the copy could have no greater face than the original. This impliedly admitted the sufficiency of the proof as to the correctness and authenticity of the copy in that case.

The testimony of H. J. Mattoon and Wm. Rosee, witnesses for the respondents at the trial, which was objected to by the appellant, but admitted by the court and exceptions taken, was properly admitted. Mattoon's evidence referred exclusively to the logs hauled by him, and put into Pass creek for respondents, under their contract with appellants, and which he testified, were "average logs for that timber, and defendants sawed them into lumber."

It seems hardly necessary to discuss the description of these logs given by the witness when his testimony shows that all which were covered by the description, were accepted by the appellants and sawed into lumber. The appellants could no longer object to this portion of the logs in dispute, after having received and converted them into lumber, and as the testimony was limited to them, it could not have misled the jury as to the rest, even if the description had been inconsistent with the requirements of the contract, upon which we need not express our opinion.

Rosee testified to the amount of good, sound, merchantable timber remaining within the limits, from which the respondents were to cut the logs to be delivered under their contract, after they had procured the quantity which they claimed to have cut and delivered to the appellants. As they claimed damages for all they could and would have cut and delivered under their contract, had they not been prevented by appellants, as well as for the quantity actually cut and delivered, this testimony was relevant and proper in establishing their claim to these prospective damages, and

there was no error in admitting it.   The testimony of Jonas Ellenburg, offered by the appellants to show that it would cost more to get logs from Rickey canyon, where respondents under their contract were to cut 400,000 feet, than from any spot within 300 yards of Pass creek, and the proportional cost of getting logs from the two places was correctly excluded, as it nowhere appears in the bill of exceptions that any evidence was offered at the trial to establish the cost of getting logs within 300 yards of Pass creek, or within any other specified distance, or that respondents had produced any testimony tending to show the relative cost of getting logs in the two places.

The last exception, however, to the admission of the testimony of Neil McKenzie, one of the respondents, to establish the account of "work and labor, etc.," pleaded in the complaint as a separate cause of action, showing that respondents made a verbal contract with the appellants, by which the latter undertook to remove a certain drift in Pass creek, which was in their way while rafting the logs down the creek to the saw-mill of the former, and that upon the failure of the appellants to remove the drift as per said verbal agreement, the respondents removed it, at a necessary expenditure of work and labor to the amount of ten dollars, which constituted so much of the account of $32.50 sued upon, is clearly well grounded.   There was no allegation in the complaint as to any such contract, and if entitled to recover this item of ten dollars at all, it was as damage for a violation of such verbal agreement, and not upon any implied promise to pay under the form of the allegation in the complaint. (*Miller* v. *Mariner Church*, 7 Greenleaf, 51; *Loker* v. *Dunn*, 17 Pick., 284.)

But as this error could only affect the verdict to an amount so small compared with the whole amount recovered, we shall not reverse the judgment if the respondents will release this amount on the judgment and pay the costs on appeal, but let it stand affirmed for the balance. (*Boyd* v. *Foot* and *Cole*,

5 Bosw., 120 and 121; *Dall* v. *Teller*, 16 Cal., 432; 4 E. D. Smith, 46.)

On the point of sufficiency of the proof of the copy of the memorandum to justify its admission, Justice Waldo expresses no opinion.