LITTLE ROCK & FORT SMITH RAILWAY COMPANY *v.* EVINS.

Opinion delivered July 8, 1905.

1. DEED—DESCRIPTION OF LAND.—A deed describing the land conveyed as "N. E. fr. quarter of the N. E. fr. quarter, section 22-8-22 W," situated in the county of Johnson in this State, is a sufficient description. (Page 261.)

2. EVIDENCE—MARKET VALUE.—Evidence held to be sufficient to sustain a finding as to the market value of land. (Page 261.)

Appeal from Johnson Circuit Court.

JEPTHA H. EVANS, Judge.

Affirmed.

*Oscar L. Miles,* for appellant.

The description of the land in the deeds introduced in evidence was insufficient to identify the land. 3 Ark. 18; 15 Ark. 297; 48 Ark. 419; 60 Ark. 487; 56 Ark. 175; 68 Ark. 150. The court erred in admitting testimony as to the measure of damages for the right of way across the land. 54 Ark. 140; 42 Wis. 538; 55 Ark. 70; 59 Ark. 110; 62 Ark. 7; 70 Ark. 403; 68 Ark. 224.

*Cravens & Covington,* for appellee.

The description contained in the deeds was sufficient. 64 Ark. 580; 66 Ark. 422. The judgment as to damages was proper. 41 Ark. 202; 51 Ark. 324.

BATTLE, J. Joseph Evins sued the Little Rock & Fort Smith Railway Company for damages caused by the use and appropriation of his lands by the defendant for a right of way for its railway. The defendant denied the appropriation and damage. Plaintiff recovered judgment against the defendant for $380, and the defendant appealed.

It is contended by appellant that the description of the land in the deed adduced by the appellee in the trial of this action as evidence of his title to the land appropriated for right of way was not sufficient to identify the land. It is described in one deed as N. E. fr. quarter of the N. E. fr. quarter, section 22-8-22 W., and in the other, N. E. fr. N. E. quarter of section 22, township 8 N., range 22 W. It was described in both deeds as situated in the county of Johnson, in this State. It was

admitted by the parties that the tract in controversy contained seven and nine-hundredths acres. We understand from this description that the land meant is the northeast fractional quarter of the northeast quarter of section twenty-two, in township eight north, and in range twenty-two west, situated in the county of Johnson, in the State of Arkansas. This description is sufficient. *Chesnut* v. *Harris,* 64 Ark. 580; *Boles* v. *McNeil,* 66 Ark. 422.

It is contended by the appellant that the evidence admitted to prove damages was incompetent, because it did not show the market value of the land.

The testimony of Joseph Evins in the trial of the action, by question and answer, was in part as follows:

"Q. State what you think is the difference between the value of the tract of land before the railroad was changed and after the change?"

The defendant objected, and the court said, "He can state what he thinks was the market value of the land before and after taking."

"A. I think the land for a quarry would be cheap at $250 per acre, the land used; the other part would be damaged at least one-half, north of the railroad; all would be destroyed south of the railroad."

"Q. The fair market value of that land before this proposed change and since—what is the difference in your judgment?"

"A. I think it is worth more today than it was ever before, because the work that has been done on it was a benefit to it; it is in a better condition to-day for a quarry than ever."

The witness, being asked a question, said: "I ask the court to enlighten me," and the court asked, "What is the difference between the value of that land before the railroad took this right of way and after the road appropriated the right of way?"

The witness answered: "About half the whole piece of land; and I think the front land is worth $250 per acre; and the other perhaps one-half—$125—south of the proposed new line."

"Q. Now, Mr. Evins, you have estimated the value of the land taken in the right of way at $250 per acre. If the balance

of the land is damaged, what is the difference between the market value of the whole tract before the railroad was moved and the value of the whole tract since? For instance, you estimate the value of the land taken and the damage, if any, to the balance. What do you think is the market value of the land?

"A. I think the land is worth to me, a fair valuation would be, $800 before they went on it this time, like it was before they went on it, and after they occupied that front, $200 would be a big estimate of the value.

"Q. That would make a difference of $600 damages?

"A. That is as low a valuation as I can put on it.

CROSS-EXAMINATION.

"Q. Now, Mr. Evins, has that kind of land any market value in this State?

"A. It has a value.

"Q. I am not talking about that. I am talking about the market value—what the general public who desired to purchase that kind of land would pay?

"A. That would be guesswork on my part. That is the only land of that character.

"Q. Do you know of any land of that kind selling in this State per acre?

"A. I don't know that I do.

"Q. The values you gave to the jury are just your own personal estimate of it?

"A. That is what I consider it worth.

"Q. You consider it worth that, but you know of no market value for that kind of land?

"A. That land is valuable, but I do not know what it is worth.

"Q. I am talking about the market value of the land; what would such land as this bring placed upon the market in the ordinary course of trade, a reasonable time given in which to effect a sale; has it a market value?

"A. It certainly has.

"Q. Tell us where any such land can be or has been sold in the market?

"A.   I don't think there is a man living who has got any money that would see it but what would buy it."

C. A. Holt was asked and answered, in part, as follows:

"Q.   Tell what you think its market value is, that is, before the new road was put there?

"A.   I think it is worth $800.

"Q.   From your knowledge of the market value of that land, what is the difference between the value of that tract of land as a whole, considering the vaue of the land that is in the right of way and the damage to the other, if there is any damage to the other—what is the difference in the fair market value of the land before the railroad appropriated this particular right of way and afterwards?

"A.   I placed the market value before at $800. I think $100 would be a poor price for it, that is a difference of $700.

CROSS-EXAMINATION.

"Q.   You state the difference in the market value was $700?

"A.   Yes, sir.

"Q.   Know of any such lands selling in the market of this State?

"A.   Yes, sir.

"Q.   Do you know of any land such as that selling in the market of this State?

"A.   This same piece of land sold for $800.

"Q.   When.

"A.   1870 some time.

"Q.   To whom?

"A.   The railroad company.

"Q.   Don't you know there was a house on that land which was torn down and destroyed which entered into the value of that land?

"A.   Not of my own knowledge.

"Q.   Do you know what the market value per acre of rock quarry land is in the State of Arkansas? ·

"A.   I don't know, I am not in that business. I suppose if it was worth that twenty-five years ago it is worth that today."

S. M. Brown: "Q.   Tell the jury what your idea is of the fair market value of the two and one-half acres of land embraced in this proposed right of way?

"A.    I think a fair valuation of it as a rock quarry would be $250 or $300 per acre.

"Q.    As a quarry?

"A.    Yes, sir.

"Q.    You are making your own personal estimate of these values?

"A.    Yes, sir."

This was the sum and substance of all the evidence as to the damages.

On motion of the defendant, the court instructed the jury as follows:

"In estimating the damages for this appropriation, the jury are not bound by figures testified to by any witness, but must take the entire testimony, and from the entire testimony in the case arrive at a just conclusion themselves."

Evins's testimony is in confusion, and to some extent contradictory. He testified that the land in question had a market value, and would readily sell in market. It does not appear that he was so ignorant of the market value of land as to be unable to give an opinion as to the same. Values of lands are not certain, and at best are matters of opinion. His opinion may be worth little, but, taking his testimony as a whole, it may be fairly inferred that his estimate of the land in question was based upon what he knew about the market value of lands generally, one of the modes of asserting the market value of land.

Holt based his estimate upon the sale of the same land to appellant twenty-five years before. Appellant paid $800 for it, and it is worth as much now as then. This is in the nature of an admission as to its value. He did not remember of any house upon it at that time. No evidence to show that there was was adduced. It does not appear that Brown did not know the market value of such land as was in question.

The jury returned a verdict in favor of the appellee for $380. No witness estimated the damages so low. They seem to have followed the instructions given at the request of the appellant, discarded the estimates of witnesses, and found one of their own. It certainly can not complain of their following its instructions.

Judgment affirmed.