Argued October 28, 1958, affirmed March 11, 1959

# ARBOGAST ET AL *v.* PILOT ROCK LUMBER COMPANY ET AL

336 P. 2d 329

*Edward J. Clark,* Pendleton, argued the cause for appellants. With him on the briefs were Peterson, Clark, Clark & Peterson, Pendleton.

*Harold Banta,* Baker, argued the cause for respondents and cross-appellants. On the brief were Yokom & Campbell, John Day, and Banta, Silven & Horton, Baker.

Before WARNER, Presiding Justice, and McALLISTER, SLOAN and O'CONNELL, Justices.

WARNER, J.

This suit is brought by the plaintiffs, Arbogast, against the defendants, Pilot Rock Lumber Co. (hereinafter called the Lumber Co.), and Travelers Insurance Company (hereinafter called the Insurance Co.), for a declaratory judgment that plaintiffs, as the owners of the fee to 240 acres of land in Grant County, Oregon, were entitled to have left all timber of every size on said lands which was not then deemed acceptable for cutting into saw logs and manufactured into lumber in October, 1924, a date when plaintiffs' predecessors in interest executed two similar timber deeds to the predecessor in interest of the defendant Lumber

Co. As to one of the original tracts, plaintiffs alleged the description was fatally defective, and they also sought a further declaration to that effect.

The defendants appeal only from that part of the decree which declares the kind and size of the timber which they presently own and are entitled to cut. The plaintiffs by cross-appeal assail the same provision of the decree and the court's holding that the description in the Rosenboom-Edling deed is not fatally defective.

Amelia Hector, on October 6, 1924, conveyed to the Hewitt Land Company timber situated on an 80-acre tract of land in Grant County, Oregon (hereinafter called the Hector tract). On October 23, 1924, Herman H. Rosenboom and Andrew Edling and his wife deeded to the same grantee timber on their nearby 160 acres in the same county (hereinafter called the Rosenboom-Edling tract).

Both deeds are identical in form. Both conveyed to the Land Company, "all of the Timber and Logs now standing, laying and being upon the following described tract of land * * *." Both deeds gave grantee "the exclusive right to enter upon the said lands and to cut and remove said timber and logs therefrom for and at any time during the period of twenty-five years from and after the date hereof * * *." The only other provision of interest in this matter was the right given to grantee to extend the time period from year to year upon payment of $6 per year upon each 40-acre tract for which an extension was requested.

Prior to 1951, the plaintiff Elmer L. Arbogast, and his wife (now deceased), acquired (as tenants by the entirety) from the grantor Rosenboom and the successors of the grantors Edling, grantors' respective

interests in the Rosenboom-Edling tract. In 1952, the plaintiffs, as tenants in common, took title from Amelia Hector for her interest in the Hector tract.

The defendant Lumber Company is successor in interest to all the timber originally conveyed to the Hewitt Land Company in 1924 by the Hector and Rosenboom-Edling deeds. The defendant Insurance Co. has an unchallenged first lien on the Lumber Co.'s interest in the timber. From this point, when we refer to the "defendant," we will mean the defendant Lumber Co.

Prior to June 30, 1954, the removal period had been extended as to both tracts by the annual payments stipulated in the deeds. At that time, the plaintiffs, Arbogast, and the Lumber Co. entered into an agreement, whereby the period for the removal of the timber was extended to October 6, 1964, as to the Hector tract and to October 23, 1964, as to the Rosenboom-Edling tract. As of the time of trial, no timber had been cut or removed.

The prime question for solution is the meaning to be assigned to the phrase appearing in the granting clause of both 1924 deeds: "all of the Timber and Logs now standing, laying and being  *  *  *." Simplified, the issue is: How much timber may be cut and how much must be left.

That part of the decree over which both parties express dissatisfaction declares: that the defendant Lumber Co. is the owner of all Ponderosa Pine now 16 inches or more in diameter, all Douglas Fir 16.5 inches or more in diameter and all White Fir 17.75 inches or more in diameter. All of the foregoing diameter dimensions include the normal average increase in growth for each species since October, 1924, and all are measured at a height of from 24 to 30 inches.

Plaintiffs argue that "all timber" means trees of a *size* and quality suitable for the cutting into saw logs and manufacture of lumber at the time of the execution of the deeds; that "timber" does not include other trees not then suitable for lumber purposes but which have since attained that stature; in short, they claim the deeds conveyed only what was the near equivalent of "merchantable timber" in October, 1924.

Defendants urge that the words "all timber and logs" embraced all trees on the land in 1924 without limitation as to size, type or merchantability.

The defendants represent by their three assignments that the trial court erred in the construction of the granting clauses by refusing to consider and give proper weight to: (1) the evidence of the surrounding circumstances and intention of the parties, (2) the evidence of the usage peculiar to the timber industry in 1924 among buyers and sellers and dealers, and (3) the evidence of the alleged practical construction placed on the instruments by the parties involved.

It is obvious that if the defendants were able to demonstrate that the legal meaning usually ascribed to the words "timber" or "all timber" is modified, limited or restricted in scope by evidence showing a different intention of the parties as derived from the circumstances surrounding the execution of the two deeds, or by evidence of local custom and usage prevailing at that time or by evidence of any practical construction placed upon the instrument by the parties initially interested therein, then the words referred to would assume a local cast and signification not consonant with the generally accepted legal meaning of the word "timber" when not so circumscribed by events or incidents peculiar to a given transaction. Such results, if supported by the evidence defendants

urge upon us, would obviate the need of inquiry into the meaning of these words as defined by judicial statement.

■■ The cardinal rule supplied by ORS 42.240, as applicable to the interpretation of deeds, imposes the duty to seek out the mutual intention of the parties, if that is possible. In that quest there can be no question that in doing so evidence of the matters referred to in defendant's assignments was admissible and, as the record shows, was admitted. ORS 41.900 (12), 42.210, 42.220; *Doherty v. Harris Pine Mills, Inc.*, 211 Or 378, 399, 315 P2d 566 (1957).

■ We have carefully examined the voluminous record which comes to us on this appeal. The greater part of it includes the evidence which the defendants now represent gives support to their theory of what the parties intended in 1924 as the meaning of "all timber." We shall not, however, undertake to refer to it with particularity, for we are persuaded after our review that standing alone, as to each separate assignment, or if taken as a composite, the record made by defendants does not warrant a conclusion that the original parties to the deeds of 1924 necessarily or inferentially used the term "all of the timber and logs * * *," in the all-inclusive, nonrestricted sense as argued for by the defendants. As aptly phrased by the trial judge in his opinion, it falls short of the mark.

The foregoing conclusion, as we have indicated, casts upon us the duty to discover the judicially-defined meaning of the word "timber" and apply it to the deeds of 1924.

Ordinarily, timber deeds have more specific descriptions of the timber conveyed than we find in the instant deeds as, for example, the descriptions are

qualified by more definite terms, such as "timber suitable for sawmills" or limited to timber of certain species, size and dimensions. But there is little in the instruments under review which is helpful in defining the language "all of the timber and logs now standing, laying and being  *  *  *," and particularly the meaning of "all timber." These terms are, in our opinion, not clear and are ambiguous in so far as the size and quality of the timber is concerned. They are wanting in the precise signification necessary to determine the issue here raised.

Under the circumstances, we turn to discover what is commonly understood in case law by the word "timber," particularly when it is employed alone in deeds and contracts for sale by the sellers of timber and buyers connected with the timber and lumbering industry.

In an early decision, *Roots v. Boring Junction Lumber Co.*, 50 Or 298, 300, 317, 92 P 811, 94 P 182 (1907), we held that "all the 'saw timber' over nine inches in diameter" was intended to embrace only timber fit for the manufacture of lumber; it did not comprehend smaller trees, or tops, useful only for cordwood.

■ In absence of modifying terms or expressions in the instrument or a construction peculiar to the locality, the general rule within the lumber industry is that the word "timber" denotes trees of a size suitable for manufacture into lumber for use in building and allied purposes. It does not, however, include saplings, brush, fruit trees or trees suitable only for firewood or decoration. *Anderson v. Miami Lbr. Co.*, 59 Or 149, 155, 116 P 1056; *Cooley v. Meridian Lumber Co.*, 195 La 631, 197 S 255, 259 (1940); *Crain v. Hoefling*, 56 Cal App2d 396, 132 P2d 882, 886 (1942);

*Holly Hill Lumber Co. v. Grooms,* 198 SC 118, 16 SE2d 816, 819 (1941); *Alcutt v. Lakin,* 33 NH 507, 509; *Kaul v. Weed,* 203 Pa 586, 53 A 489, 491; Falk, Timber and Forest Products Law (1958), 71, § 112; 34 Am Jur 493, Logs and Timber § 2; 54 CJS 672, Logs and Logging § 1; Kinney, Essentials of American Timber Law, 14, § 23. See, also, *Calmer v. Day,* 118 Wash 276, 203 P 71, 72 (1922); Annotation appearing at 91 ALR 1462 et seq.

Plaintiffs would, however, give the word a more restricted meaning. If followed, it would have a more limited effect upon the size of the trees and their availability for certain utilizations.

■ The definition of "timber" which we employ and which was the apparent definition utilized by the trial court leaves two questions unanswered: When does one determine the size of "timber" suitable for manufacture into lumber for use in buildings and allied purposes? And what measure of size is to be employed at that moment?

We find no evidence of any understanding between the parties in 1924 as to any growth of a particular size being conveyed or when the size of the "timber" was to be determined, except as may be hereinafter noticed. Whether or not such growth of timber occurring after 1924 was conveyed becomes a question of prime importance in this appeal, especially when the parties have not specifically provided for the inclusion of "growth." *Doherty v. Harris Pine Mills, Inc.,* supra (211 Or at 419).

■ The question of time of determination is not a novel one in this court. This is indicated by the able opinion of Mr. Justice BRAND, in *Doherty v. Harris Pine Mills, Inc.,* supra, where all of our earlier decisions touching this area are reviewed (211 Or at 419 et seq.).

True, all of the cases to which reference is made in *Doherty,* supra, involve "merchantable timber"; but on the question of *when* size is to be determined, the factor of time is as common to instruments conveying only "timber" as it is to those conveying "merchantable timber"; that is, when the point of such proper time is as vague or ambiguous as it is in the instant matter. The exhaustive analysis of Justice BRAND concludes that the true rule is as was stated in *Hughes v. Heppner Lbr. Co.,* 205 Or 11, 37, 283 P2d 142, and *Rayburn v. Crawford,* 187 Or 386, 398, 211 P2d 483, the gist of which is: that where there is no specific provision in the instrument establishing the time for determining the size of the timber conveyed, it is to be determined as of the date of execution of the contract. See, also, *Tenny v. Mulvaney,* 9 Or 405; *Roots v. Boring Junction Lbr. Co.,* supra (50 Or at 317); 34 Am Jur 504, Logs and Timber § 22; 54 CJS 696, Logs and Logging § 17b.

Defendants, however, point to the initial 25-year period for cutting and removal and claim it tempers the effect of the foregoing rule when applied to the instant deeds. We find a persuasive answer to this contention in *Neal Lumber & Mfg. Co. v. O'Neal,* 175 Ga 883, 166 SE 647, 648. There, the Supreme Court of Georgia observed:

> "* * * The long duration of the grant * * * may tend in some degree to indicate an intention to convey such trees as could be used as timber at any time during the life of the contract; but under the terms of the lease the right to cut and remove the trees immediately was not restricted, and the vendee could have entered at once and commenced his operations. If he had done so, is there any doubt that he would have been confined to the removal of such trees as were then fit for use as

timber? In demanding and receiving an easement of immediate entry, the grantee manifested a purpose to purchase the trees as timber. It is therefore clear that the lease was intended by the parties to operate only upon such trees as would be suitable for this purpose at the time the lease was executed." (at 650)

Any doubt that the parties intended to include only those trees classifiable as "timber" at the time of execution in 1924 is dispelled by a further examination of the granting clause. It reads, in part: "*   *   * hereby grant, bargain, sell and convey   *   *   * *all* of the Timber and Logs *now* standing, laying and being   *   *   *." (Emphasis ours.) The adverb "now" is pivotal in that phrase, for it identifies time. "Now" denotes the present time or instant; here, it is October 6, 1924, for the Hector deed and October 23, 1924, for the Rosenboom-Edling deed. *Pike v. Kennedy,* 15 Or 420, 426, 15 P 637 (1887); *Coker & Bellamy v. Richey,* 104 Or 14, 23, 202 P 551, 204 P 945, 204 P 947; *Tillamook City v. Tillamook County,* 56 Or 112, 115, 107 P 482. Cf. *In re McNabb,* 175 F 511, 513 (D Or 1909). For timber cases construing the word "now" see *Crawford v. Atlantic Coast Lbr. Co.,* 79 SC 166, 60 SE 445, and *Davis v. Haslam Lbr. Co.,* 213 SW2d 771 (Tex).

The use of the word "now" in the deeds indicates to us that it was the intention of these parties that only those trees constituting "timber and logs" at the time of execution in 1924 were conveyed to defendants. To include by parol or judicial construction the "growth," or trees not of suitable size as "timber" in 1924, but which have since attained that stature, would be repugnant to the express terms of the instrument, and beyond the reach of ORS 42.230 and contrary to ORS 41.740.

In view of the foregoing conclusions concerning the moment for measuring the size of timber conveyed by an instrument which does not fix that time, we might well add to our definition of "timber" the words: "size of the timber to be determined as of the time of the execution of the instrument of conveyance, if the time is not stipulated therein."

We hold that the trial court was correct in determining, as it did, that the "timber" conveyed in 1924 was that which satisfied the definition of that word as of that time. This necessarily repudiates the all-inclusive theory of ownership urged by the defendants.

Before proceeding to give answer to the second question, i.e., what measure of size is to be employed to find what trees should be included in the word "timber" as of the date of the execution of the 1924 deeds, we digress to take note of a concession found in defendants' brief. There they say: that the defendants are satisfied with the findings and decree as to the timber which can be cut under the two 1924 deeds in the event the theory adopted by the trial court is determined by this court to be the applicable law. Inasmuch as we have reached that conclusion, we could terminate this opinion at this point were it not for plaintiffs' cross-appeal.

The plaintiffs' position reflects a substantial acceptance of the definition of "timber," except in the few broader aspects which we have hereinbefore noticed and rejected. From their second assignment of error on cross-appeal, we glean that even if they are bound to accept the definition of "timber" which we have embraced, they yet strenuously object to the tree measurements employed by the court in the decree and to the decree's implied inclusion of a type of tree

and parts thereof which they assert were not utilized in 1924 by the logging industry as it did in later years and now does.

In this case, the element of tree size is so commingled with the question of utilization that we will discuss the same together. The answer is one of considerable importance to both parties, because if the decree is permitted to stand as made by the court, even under the approved definition of timber, the defendants may ultimately receive a larger aggregate footage than they otherwise would if plaintiffs' contention respecting what constitutes the proper measurement and utilization are adopted.

We sharpen this issue by restatement before going forward. The decree provides that the species of timber therein described shall be cut at heights from 2 feet to 30 inches as was done in October, 1924, with trees having a diameter of 12 inches at that time. Plaintiffs claim that in October, 1924, the usual measurements employed were only with reference to trees then having a diameter of 16 inches, measured at "breast high." The decree does not exclude from the permissible cut, trees which were limby or knotty or having curves or other defects. Plaintiffs represent that a species of selective logging prevailing in 1924 excluded trees of that character, although in more recent years utilized by the timber and lumber industry. They say that only straight, clear trees, free from knots and other defects were deemed acceptable for lumber, and, therefore, in applying the definition of what was timber in 1924, it should be limited to what were then straight, clear trees, free from such defects as of that time. Under their thesis they claim not only the so-called defective trees, but also portions of the trees to which defendants are entitled, but which por-

tions were not, as they say, of the kind utilized in 1924.

It is, therefore, evident that what may be the proper measurements for the cut of "timber" at a given time and what kinds of trees and parts of trees were then utilized, is not of easy and ready solution. The matters of size and utilization cannot be resolved in form of rules such as we are able to resort to in answer to the question of proper time for the determination of what constitutes timber. These facts are variable as to each separate timber transaction and can only be answered by recourse to evidence.

Plaintiffs' concept of "utilization" of timber as of a given year is at conflict with the definition of "timber" as previously accorded the term. Plaintiffs' concept moves away from the factor of size as the sole criterion in the definition of "timber." Their evidence of utilization introduces considerations of tree quality and type and questions of economics and accessibility.

Reverting to our definition of "timber," we find it comprehends at the time of the deed only "trees of a size suitable for manufacture into lumber for use in building and allied purposes." There, reference to "a size suitable for manufacture into lumber, etc.," merely furnishes and adopts a standard of measurement, a convenient yardstick, to be used in determining what trees constitute "timber" in fact, as of the date the parties consummated their deal. It can have no relation to the cruises made before 1924 or after. Incidentally, we observe that the deals made by and between the owners in 1924 and their grantee, Hewitt Land Company, were for lump-sum considerations paid at the delivery of those deeds, and not on a per-dollar basis for each 1,000 B.M. cruised.

As we construe the deeds, the only restriction was

size; that is, a size suitable for the manufacture of lumber. To engraft other qualifications suggested by plaintiffs' concept of utilization into the terms of the deeds would be to write a new contract for the parties.

■■ In absence of contractual provisions to the contrary, we think that the sound construction of the definition of "timber" requires that we hold "all of the timber" in conveyances such as we have here passed the title in 1924 to the entire or whole of each tree which can qualify dimensionally under the definition of "timber" approved. Such a conclusion is more consonant with the well-established rule in this state that the title to the trees conveyed reposes in the grantee. *Seguin v. Maloney-Chambers,* 198 Or 272, 283, 253 P2d 252, 256 P2d 514, 35 ALR2d 1412; *Anderson v. Miami Lbr. Co.,* supra (59 Or at 154). Certainly under that concept of ownership we cannot say a part of the tree belongs to the grantor and another part of the tree belongs to the grantee unless the deed makes a clear provision of that character and supplies a formula for determining such an unusual ownership in particular trees. See, also, *Compton v. Hardin,* 210 Ala 179, 97 S 686, 687; *Smith v. Heath,* 207 Ala 4, 91 S 799, 800; *Ladnier v. Ingram Day Lumber Co.,* 135 Miss 632, 100 S 369, 371; *Craddock Mfg. Co. v. Faison,* 138 Va 665, 123 SE 535, 537; 54 CJS 695, Logs and Logging § 17a, where it said: "Conveyances of standing timber give the purchaser a right to all parts of the trees in addition to the bodies to be manufactured." See, also, *Kinney,* supra, p 14 § 23, to the same effect.

We think the court properly ignored the element of utilization in this matter.

Our failure to follow or adopt plaintiff's theories of utilization does not foreclose the need to examine

the evidence to find what was the size or measurements employed in the area of the deeded timber in 1924, in order to qualify it as "timber" conveyed in that year.

Evidence from plaintiffs' two witnesses on the proposition of "size" in 1924, suggested a diameter of 16 inches instead of 12 inches, as found in the decree. The testimony of defendants' witnesses warrants a finding that such smaller timber was cut in 1924; as Bennett put it, "we cut anything down to a 12 inch stump," meaning trees of that diameter, and leaving stumps about 20 or 22 inches high measured from the ground. Plaintiffs' motion to open the case speaks of Scott Burnett's testimony as "technically correct." Plaintiffs also declare that the trial judge based his decision on this point exclusively on the testimony of the witness Burnett. We cannot agree. There was other testimony of the same tenor.

■ Our examination of the record leads us to the conclusion that the tree measurements incorporated in the decree were correct. Our knowledge that the trial judge had the additional advantage denied to us of observing the witnesses as they testified, adds weight to that result.

■ The second assignment of error advanced by plaintiffs' cross-appeal is directed to the court's denial of their motion to reopen the case after both parties had rested and hear further evidence from witnesses that plaintiffs desired to present, if given the opportunity, to rebut the testimony of Scott Burnett and others to the effect that in the "twenties"; that is, around the year 1924, it was the prevailing custom to cut timber as small as 12 inches in diameter. The motion was supported by five affidavits from prospective witnesses.

Before considering the motion further, it is well

to first notice the status of the record at the time the motion was filed. The trial began August 21, 1957, and lasted three days. After the submission of briefs, the court rendered its opinion on October 10, 1957, and entered its decree on November 13, 1957. Plaintiffs' motion to reopen the case was not filed until November 8, 1957. The jurats on the supporting affidavits show that they were all executed on or after November eighth, strongly suggesting that the motion was an after-thought inspired by disappointment in the opinion of October tenth.

If surprised by the testimony of Burnett and others, the plaintiffs failed to move for a continuance, as they properly should have done. *Manning v. Gregoire,* 97 Or 394, 399, 191 P 657, 192 P 406; *Estate of Gerhardus,* 116 Or 113, 117, 239 P 829; *Jones v. Warmsprings Irrigation District,* 162 Or 186, 205, 91 P2d 542.

■ It is well established that the reopening of a case at any time for the introduction of additional evidence rests in the sound discretion of the trial court, the exercise of which will not be disturbed unless a manifest abuse has occurred. *Manning v. Gregoire,* supra (97 Or at 403); *Hilgedorf v. Bertschinger,* 132 Or 641, 647, 285 P 819 (1930); *Jones v. Warmsprings Irrigation District,* supra (162 Or at 205).

Moreover, we are not impressed with plaintiffs' claim of surprise. Their very definition of "timber" as reflected by their complaint, specifying certain tree measurements, and contended for throughout the trial, involved, and necessarily so, trees of that size measured at a certain height. These allegations were denied by defendants' answer. Plaintiffs, therefore, had reason to believe that their position in this respect would be controverted and had ample opportunity to have

had the witnesses at hand for the purposes of their case.

The trial judge did not abuse his discretion in denying the motion.

■ We now turn to the last of plaintiffs' assignments on cross-appeal. It is contended that the trial court erred in approving the description in the Rosenboom-Edling deed of October, 1924. Plaintiffs represent that the deed does not sufficiently identify the land, because the word "quarter" was thrice omitted therefrom. Accordingly, they would have us hold the deed void. The Rosenboom-Edling parcel is described as follows:

"South Half of the Southwest [*] and the Southwest [*] of South east Quarter of Section Twenty (20) and the North west [*] of North west quarter of Section Twenty nine (29) All in Township Seven (7) South, Range Thirty (30) East W. M."

[Note: the asterisks indicate where plaintiffs contend the word "quarter" should be inserted.]

There appears to be a conflict of authority as to the sufficiency of this description as indicated in *Hagerman v. Thompson,* 65 Wyo 515, 235 P2d 750, 757; 1 ALR 1228. Similarly, clarity and harmony do not prevail in the earlier Oregon decisions. *Smith v. Dwight,* 80 Or 1, 148 P 447, 156 P 573 (1916); *Noble v. Watrous,* 84 Or 418, 163 P 310, 165 P 349 (1917). In the Smith case, supra (80 Or at 9), objection was made to a tax assessment-roll description (northeast of southeast quarter and the southeast of the northwest quarter) because the figure "1/4" was omitted. In refuting this proposition, the court upheld the description and called the omission "a mere irregularity." Subsequently, in the Noble case, this court was again confronted with the sufficiency of a tax title descrip-

tion based on an assessment roll. It there appeared as "W² of N.E.⁴ and W½ of N.E.⁴" Without alluding to the Smith case, the court commented that tax titles were not favored and held that an exponent was not effectual to designate fractional sections of land (84 Or at 421, 422). For reasons which follow, we consider these decisions relating to tax descriptions of questionable value and weight when determining the sufficiency of a description in a deed between private parties.

We find that courts are not inclined to insist on that accuracy of description in deeds inter partes which is required in sheriff's deeds or other transfers of property in proceedings in invitum. It is said that in the latter type of conveyances there can be no recourse to the "intention of the parties" as a guide to construction as can be done with the descriptions of the same character in voluntary instruments between private parties. Ordinarily, a stricter rule is applied to conveyances in invitum. *Carter v. Holman,* 60 Mo 498, 504; *Sherlock v. Varn,* 64 Fla 447, 59 S 953, 955; *Lawson v. Hedges,* 37 NM 499, 24 P2d 742, 743, 1 Patton on Titles (2d ed 1957) 428 § 160.

We are impressed with the realistic approach made and solution found in *Ballard v. Bank of Roanoke,* 187 Ala 335, 65 S 356, 357, where the description in a deed between private parties, read: "S.W. S.E. sec. 29 & N. ½ N.E. sec. 32." Concerning this, the court said:

"* * * Common knowledge and experience in this state renders absolutely certain the meaning of the permissible abbreviations quoted from the deed. In land parlance here the calls describe the *southwest quarter of the southeast quarter of section 29, and the north half of the northeast quarter of section 32.*"

See 1 Patton, supra, § 160, also, *Little Rock & Ft. S. Ry. Co. v. Evans,* 76 Ark 261, 88 SW 992. We think the same common knowledge and experience prevails in this jurisdiction.

In the briefs of the parties, as well as in the foregoing cases cited in this opinion, the descriptions referred to are, in the main, decisions involving abbreviations of descriptions of words designating legal subdivisions of government surveys and employing or failing to employ fractions or exponents of a kind to indicate the quantum character of the subdivision of a given section.

In the instant matter, as the above description from the 1924 Rosenboom-Edling deed indicates, the various subdivisions are not in abbreviation, but the words spelled out in full. It is the omission of words or figures or symbols that draws plaintiffs' criticism. It is a situation known both to grammarians and the law as an ellipsis.

Ellipsis, grammatically speaking, is a term which means "the omission from a sentence of a word or words that are essential to its grammatical completeness, though not necessarily to the completeness of its sense." The missing words are sometimes described as "words which the hearer [or reader] easily supplies." Evans, A Dictionary of Contemporary American Usage (1957) p 153. Webster's New International Dictionary (2d ed) speaks of the word ellipsis as the "omission from a construction of one or more words, which are obviously understood, but must be supplied to make the expression grammatically complete." See, also, 29 CJS 665; Black's Law Dictionary (4th ed), p 613; 14 Words and Phrases (perm ed) p 360.

Elliptical expressions in various instruments and statutes have been judicially recognized and for the

purposes of grammatical completeness the courts have supplied the missing words obviously understood. *In re Lippincott's Estate,* 276 Pa 283, 120 A 136 (1923) (construing a will); *Sirvint v. Fidelity & Deposit Co.,* 242 App Div 187, 272 NYS 555, 556-7 (1934) (an insurance policy warranty); *State v. Staub,* 182 La 1040, 162 S 766, 767 (a criminal statute).

Here, the missing word so obviously understood by the reader of the Rosenboom-Edling deed, and as so evidently expressing the intent of the grantors, is "quarter" at the three places above indicated by the asterisks. Although not referring to the omissions as ellipsis, this, in essence, was what the court recognized when, in *Ballard v. Bank of Roanoke,* supra, it supplied the missing words in the description there under review.

To read the challenged description as elliptical in character and supply the understood omitted words, we find from the record that in so doing many others closely connected with the property have been doing likewise since 1924. Thus, the plaintiffs admit in their complaint that the Rosenboom-Edling tract contained 80 acres, a figure difficult to compute unless the description is read as claimed by the defendants. The plaintiff Elmer L. Arbogast testified that he was not misled by the description or absence of the word "quarter" in the deed when he bought the land, that he knew that the timber on these quarters had been sold. We also note that neither plaintiffs nor the grantors in the 1924 deed had any difficulty in determining how much they were entitled to under the provisions of the Rosenboom-Edling deed for annual extensions, payable on the basis of $6 per each 40 acres involved, nor in learning whether the defendants or the grantees under the deed had made the annual pay-

ment of one-half the taxes assessed against the premises so described, as required by the deed.

We find no error in the trial court's holding that the description in the Rosenboom-Edling deed is certain and sufficient.

Affirmed.