## ALCUTT *v.* LAKIN.

A reservation in a deed of "*all the hemlock, spruce and birch timber in the wood lot*" on the premises conveyed, includes all the standing trees of those kinds in the lot suitable for timber.

A limitation of the reservation to trees, "*measuring forty-two inches in circumference at the stump,*" does not exclude the bark upon such trees at the point of admeasurement, in ascertaining the circumference.

TRESPASS for breaking and entering the plaintiff's close, and cutting and carrying away timber. The general issue was pleaded, with a brief statement, justifying the act under the reservation in a deed.

The defendant owned the premises, and by deed with war-

ranty, on the sixth day of January, 1855, conveyed them to the plaintiff, " reserving all the timber in the wood lot on said land, measuring forty-two inches in circumference at the stump, said timber to be removed from off said land before the first day of April, 1855, meaning the hemlock, spruce and birch timber."

The court ruled and instructed the jury, that the defendant by said reservation had the right, within the time limited, to cut and remove all the birch, spruce and hemlock trees, standing in said wood lot, measuring forty-two inches and over in circumference, with the bark on, at the usual place of cutting them off at the stump in felling them.

The plaintiff offered evidence that at the time of said conveyance there was a quantity of timber felled, which was lying about in said wood lot, which he contended was the timber reserved by said deed, which evidence was excluded by the said ruling of the court.

To this ruling the plaintiff excepted, contending that the reservation did not include standing trees, and that the measurement should be made after the bark was removed, or with the bark on, making proper allowance for the bark, to be deducted in getting the size of the tree included in said reservation.

*Cutter*, for the plaintiff.

*Stevens*, and *D. Clark*, for the defendant.

FOWLER, J.   Two questions only arise upon the exceptions to the rulings of the judge who presided at the trial below.   The first is, whether the reservation in a deed of " all the hemlock, spruce and birch timber in the wood lot," on the premises conveyed, includes standing timber trees of those kinds ; and the second, whether, if standing trees be thus included, the words of the deed limiting the reservation to trees " measuring forty-two inches in circumference at the stump," are to be construed as including or excluding the bark upon those trees at the point of admeasurement.   There hardly seems to be any reasonable doubt of the correctness of the ruling on both points.

Timber is defined by Webster and other lexicographers as that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships, and the like. The word, says Webster, is applied to standing trees which are suitable for the uses above mentioned, as when we speak of a forest, it is said to contain excellent timber; or it is applied to beams, rafters, scantling, boards, planks, and other manufactured lumber, hewed or sawed from such trees. These are the two principal and legitimate applications of the word, and it is manifest that the first must have been intended by the reservation in the defendant's deed to the plaintiff, for there was no manufactured lumber on which it could operate, so far as appears from the facts reported in the case. Besides, the reference to the circumference at the stump would very clearly indicate that the parties at the time must have had reference to trees that were to be cut down, else they would not have imposed such a restriction. If only trees already felled were intended to be reserved, the reservation would have been unnecessary, or, if necessary at all, it could hardly have been deemed important to specify the size of the trees, inasmuch as those less than forty-two inches in circumference at the stump could have been of very little value to the purchaser of the land, while they might have been of some importance to the owner of the larger felled trees, to be removed at the same time and sold with them. But small standing trees would be valuable to the land owner, to be preserved until they attained suitable dimensions for timber. They might grow upon the soil, and in a few years become valuable property, without risk or expense to him, and in that view only could the limitation be of importance.

The statutes and adjudged cases furnish numerous examples of the use of the word "timber," in the precise sense given to it in the rulings of the court below.

In *Pease & a.* v. *Gibson*, 6 Greenl. 81, there was a contract for the sale of all the "pine trees fit for mill logs," on certain lands. In various parts of the same contract these trees are spoken of as "timber," "the timber," and "said timber,"

showing conclusively that the parties in that case understood " pine trees fit for mill logs," to be " timber," and nothing else.

In *Putney & als.* v. *Day & als.*, 6 N. H. 430, a sale of " all the pine timber on a certain part of a lot," was construed by the court, in accordance with what appears to have been the understanding of all the parties, to be a sale of all the pine trees standing on that part of the lot, suitable for timber.

So in *Olmstead* v. *Niles*, 7 N. H. 522, where the contract was a sale of " all the pine timber on lot No. 13," nobody seems to have doubted it was a sale of all the standing pine timber trees on the lot.

By sec. 6 of chap. 164 of the Rev. Stat., the judge of probate is authorized to license administrators to sell timber growing or standing on the real estate of the deceased.

Nor have we any hesitation in holding that the bark should be included in the admeasurement of forty-two inches at the stump, as specified in the contract. The bark is an integral and essential portion of the tree, indispensable to its life and growth. Besides, it would be extremely difficult, if not utterly impracticable, to ascertain the circumference of a tree without the bark, while standing. The idea that, in a contract concerning timber trees, between practical business men, it was ever contemplated that their circumference was to be ascertained while standing, without including the bark in the measurement, seems to us preposterous, as there is no practicable mode of ascertaining the exact thickness of the bark but by the actual admeasurement of a section of it. But the circumference of the standing tree, including the bark, can very readily be ascertained at the usual place of cutting it off at the stump, and we are of the opinion that this mode of admeasurement must have been in the minds of the parties when making the contract under consideration.

As the rulings of the court upon the trial were correct, there must be

*Judgment on the verdict for the defendant.*