## Polley v. Ford.

(Decided February 22, 1921).

## Appeal from Pike Circuit Court.

1. Logs and Logging—Sales and Conveyances of Standing Timber.— The provision in a deed conveying "saw log timber" on a described tract of land, that the grantor gives to the grantee, over other lands of the grantor, "the full right of way to haul and cut all of said timber, a good and sufficient road to haul on, corn and anything else, down said creek to the river," was a mere license to the grantee to use the passway while getting out the "saw log timber," which was the chief subject of the conveyance.

2. License—In Respect of Real Property.—A license as applied to lands is an authority to do a particular act or series of acts upon the land of another without possessing any estate therein.

3. Logs and Logging—Sales and Conveyance of Standing Timber.— The conveyance of the "saw log timber" on a described tract of land means such as is "saw log timber" at the date of the conveyance, and does not include any that may thereafter become "saw log timber" either by the growth of the timber or the changed conditions in the lumber market.

4. Logs and Logging—Removal of Timber—Express Grant—As no time was fixed for the removal of the timber, and it was contemplated that the same was to be promptly removed, as the conduct of the parties showed, the law will imply an obligation to remove it in a reasonable time; and as the right to the passway only existed for the purpose of removal, that right also expired with the expiration of the reasonable time.

STRATTON & STEPHENSON for appellant.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

In February, 1896, James Polley owned a tract of land in Pike county at the mouth of Powell's creek, including a public road running parallel with the Big Sandy river and the land between the county road and the river. He also owned some timber lands higher up on Powell's creek, as did also the appellee, John W. Ford.

The appellant, D. C. Polley, is the successor in title of James Polley to the farming lands between the county road and the river.

In February, 1896, James Polley and John W. Ford made an exchange of timber on certain lands owned by

them on Powell's creek, and Polley, on the 6th of February, 1896, conveyed to Ford:

"All the saw log timber on all the land below the conditional line deeded to John W. Ford by James Polley and wife on Powell's creek, a tributary of Sandy river in Pike county, Ky., it being the land deeded by John W. Powell to James Powell and John W. Ford, the party of the first part hereby gives the party of the second part the full right of way to haul and cut all of said timber, a good and sufficient road to haul on, corn and anything else, down said creek to the river."

Thereafter for some years, Ford, in getting out the timber, used a roadway over the bottom lands of Polley from the county road to the river, as did Polley himself in getting out some timber from up that stream.

Some years ago, D. C. Polley, the present owner, fenced up the passway leading from the county road across his farming lands, and in September, 1918, Ford brought this equitable action, relying upon the deed quoted, and asked the court to establish for him a permanent passway for all purposes, which the circuit court in its judgment did, and D. C. Polley has appealed.

The only question involved is an interpretation of that deed in so far as it gives a right of way to Ford; that is, to determine whether it was a grant of a permanent passway for the hauling of saw logs and for all other purposes which would be appurtenant to the land of Ford lying higher up the creek; or whether, considering the situation of the parties, and the nature of the conveyance, and what was contemplated in the conveyance, it was a mere license to Ford to use that passway while getting out the "saw log timber," which was the chief subject of the conveyance.

It will be observed that Polley did not convey in this instrument any land to Ford but only the "saw log timber" on a prescribed tract; in other words, he conveyed to him only a certain part or interest in the tract of land, which when detached therefrom became personalty, and then there is provided a manner by which that personal property may be conveniently gotten to the river and thence to the market.

Let us consider the situation of these parties. Ford and Polley each owned timber lands containing "saw log timber" on Powell's creek; they made an exchange of timber and they each desired to get their timber to the river in the most convenient way, so that it might go to

market, and they each did shortly thereafter get out that timber and transport it to the river and each used the passway across Polley's bottom land. Polley knew when he gave this right of way to Ford that it would also be convenient for himself; it was clearly contemplated by the parties that the "saw log timber" involved would be removed from the land and transported to the river in a reasonable time, and the right of way was given by Polley not only to facilitate the operation for Ford in getting out the "saw log timber" conveyed to him, but in getting out his, Polley's, own saw log timber.

In the light of these circumstances and conditions, is it reasonable to suppose that Polley intended to convey over his farming lands a perpetual right of way to Ford for all purposes, which would become appurtenant to and attach to the land that Ford owned up Powell's creek? On the contrary, is it not much more reasonable to assume, in the light of the timber operations which they both then contemplated, that Polley intended only to give to Ford a license to use his farming lands for a right of way while he was getting out the "saw log timber" he was then conveying him, he, Polley, at the time expecting to use the same roadway in connection with Ford's use of it?

Polley had conveyed to Ford no land to which this right of way could be permanently appurtenant, but he had conveyed to him certain saw log timber which made the right of way temporarily valuable to Ford.

A license as applied to lands has been defined to be "an authority to do a particular act or series of acts upon the land of another without possessing any estate therein." East Tennessee Telephone Co. v. Paris Electric Co., 156 Ky. 762.

Applying that definition of a license to the language used in the instrument involved, and taking into the estimate the situation of the parties and their purposes at the time, it is fairly apparent that it was a license for a specified purpose which Polley gave to Ford.

But it is said that the right given to haul "corn and anything else" is inconsistent with this view, but we do not so construe it. The hauling of corn and other feed for stock, as well as the hauling of provisions to feed men, is necessary in the getting out of timber on a large scale, and it was evidently in the minds of the parties that such things might be hauled over this right of way.

The conveyance of the "saw log timber" meant only such timber as was "saw log timber" at the date of the conveyance, and does not include any that has become "saw log timber" since, either by the growth of the timber or by the changed conditions in the lumber market; and as the contract fixed no time in which the timber was to be removed or the passway to be used for that purpose, and it was contemplated that the timber was conveyed for immediate removal, as the conduct of the parties shows, the law implies that it is to be done in a reasonable time. And surely from 1896 to 1918, when this suit was brought, is more than a reasonable time. Evans v. Dobbs, 112 S. W. 667.

Our interpretation of the instrument involved is that it gave to Ford only a license to temporarily use the bottom lands of Polley for a reasonable time while he, Ford, was getting the saw log timber conveyed to him by Polley to the river for transportation to market.

The judgment is reversed with directions to dismiss the plaintiff's petition.