[No. 16722. Department One. January 11, 1922.]

## PAUL CALMER et al., Respondents, v. JOHN MILLS DAY et al., Appellants, F. B. HURSLEY, Defendant.[1]

LOGS AND LOGGING (21, 22) — LABOR LIENS — REMEDIES OF LIEN CLAIMANTS—PROPERTY SUBJECT TO LIEN—STATUTES — CONSTRUCTION. Under Rem. Code, § 1149, giving every person performing labor in the operation of any "sawmill, lumber, or timber company" a prior lien on all the real and personal property of the employer used in the operation of the business, for moneys due for labor performed within six months next preceding the filing of a claim therefor, a laborer's lien for work in logging operations takes precedence over a chattel mortgage of the equipment of a logging company.

SAME (21, 22). Rem. Code, § 1162, giving loggers a lien upon the product of their labor, and Id., § 1149, giving laborers a lien upon all the property of the employer used in the operation of the business, afford merely cumulative remedies, requiring no election between them, since they are not inconsistent.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered May 21, 1921, in favor of the plaintiffs, in an action to foreclose logger's liens, tried to the court. Affirmed.

*John Mills Day* and *Hartman & Hartman,* for appellants.

*Tucker & Hyland (Mary H. Alvord* and *Ford Q. Elvidge,* of counsel), for respondents.

[1]Reported in 203 Pac. 71.

TOLMAN, J.—Appellant John Mills Day was, during the year 1920, engaged in the logging business in Kitsap county, cutting saw logs upon the lands of certain Indian allottees, and by the use of donkey engines, motor trucks, etc., removing and transporting the logs when cut to a temporary wharf in the waters of Puget Sound, where the logs were boomed and sold to saw mill operators as opportunity offered.

On September 13, 1920, he gave a chattel mortgage to the appellant Northwest Trust & Savings Bank, covering all of his engines, trucks, tools, logging and camp equipment, to secure the payment of $5,500 of borrowed money, which mortgage, by reason of a misunderstanding, was not filed for record within the ten-day period. Learning of this fact, the bank caused a new mortgage to be drawn and duly executed on November 16, 1920, which was duly filed of record on November 18, 1920.

Thereafter respondents, who were laborers employed by appellant Day in his logging operations, caused their lien claims to be duly filed for wages earned largely before the filing of the chattel mortgage, upon all of the logs then remaining in the possession of the appellant Day, and also upon all of the equipment covered by the chattel mortgage, and brought this suit to foreclose such liens. The action was prosecuted under Rem. Code, § 1172 et seq. (P. C. § 9689 et seq.), and under § 1174 (P. C. § 9691), appellants filed with their answers, motions and demurrers raising the question of whether respondents are limited to the right of lien upon the saw logs only, as provided by Rem. Code, § 1162 (P. C. § 9679), or may, under § 1149, Rem. Code (P. C. § 9737), enforce their liens also against the equipment. From a decree adjudging the liens to be prior to the chattel mortgage, upon all of the property

in the mortgage described, appellants have brought the case here for review.

No question was raised below, nor is any raised here, as to respondents' lien rights against the logs, but it is strenuously contended that respondents are not entitled to a dual lien or a cumulative remedy giving them the benefit of both of the statutes hereinbefore referred to.

The logger's lien act, § 1162, Rem. Code (P.C. §9679), is the earlier in time, and it provides, in brief, that every person performing labor upon or assisting in obtaining saw logs shall have a lien thereon for his work and services, and subsequent sections provide for the filing and the enforcement of the lien. The employee's lien act, § 1149, Rem. Code (P. C. § 9737), subsequently enacted, provides:

"§ 1149. Laborer's Lien on Property, Franchises, Etc.—Every person performing labor for any person, company or corporation, in the operation of any railway, canal or transportation company, or any water, mining or manufacturing company, sawmill, lumber or timber company, shall have a prior lien on the franchise, earnings, and on all the real and personal property of said person, company or corporation, which is used in the operation of its business, to the extent of the moneys due him from such person, company or corporation, operating said franchise or business, for labor performed within six months next preceding the filing of his claim therefor, as hereinafter provided; and no mortgage, deed of trust or conveyance shall defeat or take precedence over said lien."

The subsequent sections provide for filing, service of notice, and that foreclosure may be had "in the same manner as mechanic's liens are foreclosed."

The question here presented is a new one in this state, and though each party cites a number of our prior decisions as tending to sustain his position, we find nothing in any of them which is at all helpful, except

that they recognize that these statutes are remedial in their nature and must be liberally construed.

Nor are the authorities from other jurisdictions such as to lead us to a clear and speedy answer. Respondent cites *Faircloth v. Webb,* 125 Ga. 230, 53 S. E. 592, and *Garrick v. Jones,* 2 Ga. App. 382, 58 S. E. 543, but the Georgia statute upon which these decisions rest is so different from our own as to make even a discussion of those cases futile. Appellant chiefly relies upon the case of *Pardee's Appeal,* 100 Pa. St. 408. There it appears a logging contractor ceased work, discharged his laborers without paying them in full, and removed his teams and equipment, in good faith, to his farm some ten miles distant, where they were levied upon and sold by a judgment creditor, and thereafter the laborers sought to enforce their liens against the fund in the sheriff's hands arising from such sale. The court, in denying the right to a lien, after setting out the gist of the statute under which the liens were sought to be enforced, said:

"The words, 'works, mines, manufactory,' thus employed in the act, have a definite signification, well understood in their general and popular acceptation. Ex vi termini the branches of business intended to be described by them are, in a certain sense, complete and independent, and of a fixed and permanent character, as opposed to a temporary employment that is merely incidental to any particular branch of business. It will scarcely be pretended that either of these words fitly describes the business in which appellant was employed. It is contended however that the expression 'other business,' etc., is sufficiently comprehensive to embrace cutting and driving logs. Perhaps it would, if we were at liberty to construe it without reference to the context; but the preceding words, designating particular branches of business with which the idea of permanency and completeness, in a certain sense, is always associated, must control the meaning of the

more general expression used in immediate connection therewith. The 'other business' is ejusdem generis with that more particularly described by the preceding words of the context, business of the same general character, not embracing every species of employment in which the services of others may be rendered."

Clearly this does not meet our present question. We are asked to define the words of our statute, "any person, company or corporation, in the operation of any railway, canal or transportation company, or any water, mining or manufacturing company, sawmill, lumber or timber company," as not including one engaged in logging; or, in other words, to hold that "sawmill, lumber or timber company," cannot include one engaged in getting out logs or timbers to be sold or transported to a mill for manufacture.

We may put aside everything but the words "timber company" and we then have a statute reading, "Every person performing labor for any person, company or corporation in the operation of any . . . timber company, shall have a prior lien," etc., and we must determine whether the getting out of saw logs is included in the operations of a timber company. The Standard Dictionary defines the word "timber" thus:

"1. Wood of suitable size and quality for building and allied purposes, cut, squared, sawed, or otherwise prepared for use, especially the larger forms of lumber adapted for beams, scantling, etc. 2. Growing or standing trees from which such wood may be obtained, often called standing timber; in English law, oak, ash, and elm, and sometimes, by local custom, other kinds of trees. 3. A single piece or squared stick of wood prepared for use, or already in use, in framing; a wooden beam; as, the *timbers* of the house are still strong."

While Webster's New International Dictionary, among other things, includes:

"1. Wood. Obs. or R. exc. specif.: a. Wood suitable for use in buildings, carpentry, etc., whether in the tree or cut and seasoned. b. Forest land covered by trees producing such wood. Western U. S. c.=Lumber n., 3. Eng."

"The term 'timber', as commonly used in this country, signifies either growing trees or large sticks, and is not commonly applied to smaller pieces or rails or cordwood into which the larger pieces may be worked up." *Anderson v. Miami Lumber Co.*, 59 Ore. 149, 116 Pac. 1056.

See, also, *Butler & Barrow v. McPherson Bros.*, 95 Miss. 635, 49 South. 257.

Were we to indulge in a strict construction we might determine that the legislature had in mind, in using the words "timber company," not a company manufacturing timbers in sizes suitable for building and allied purposes, or squared sticks of wood ready for use, because these operations are covered by the words which precede "timber company" in the statute, the phrase reading "sawmill, lumber or timber company", but only had in mind a concern engaged in growing standing timber; but even so, would not one engaged in growing standing timber, of necessity, in order to market his product, be at times obliged to cut and transport the logs, and should not his employees, whether engaged in protecting and preserving the growing timber, or in cutting and transporting it to market, be equally favored by the law?

However, accepting a liberal construction, as we must, does it not seem clearly the legislative intent to protect equally all employees, whether employed at a sawmill in cutting logs into lumber or timbers, by a lumber company in the manufacturing, transportation, and disposition of its products, or by a timber company in any of its operations incident to its business, from the growing of the tree to and including its severance

and sale? If such was not the legislative intent and it had been considered that logging operations were not covered by the terms used, would not the legislature (since already, by § 1163, Rem. Code; P. C. § 9680, of the earlier act, those employed in manufacturing saw-logs into lumber and other timber products were protected just as those employed in logging were protected by § 1162; P. C. § 9679) have used the term "logging company"?

We are of the opinion that, in enacting § 1149, Rem. Code (P. C. § 9737), the legislature was dealing with liens of employees generally, and meant to use broad terms including all employees who, by a liberal construction, could be brought under the terms used, whether by other legislative acts they already had a right of lien or not, and the phrase "sawmill, lumber or timber company" was intended to cover all those engaged in the timber and lumber business who performed any service for any employer engaged in any part of the work required to reduce the tree from a living part of the forest to merchandise, or to that state of manufacture where it becomes an ordinary subject of commerce. Any other construction would discriminate between those employed by a sawmill or lumber company and those employed by a logging operator, to the advantage of the former, and we see no reason why the legislature should intentionally so discriminate.

If, then, the legislature did not intend to discriminate between the different classes of employees engaged in transmuting standing timber into a commercial form, it follows that it did intend, by the enactment of the later statute, to supplement or add to the security given to each class by the earlier statute; and to permit each, in addition to the right to a lien upon the thing produced, to claim also a lien upon the other and more

permanent assets of the employer which are described in the later statute. If this be so, then each should have what appellants term a "dual lien" or "cumulative remedy." But one objective is sought, i. e., the payment of the wages due; but one payment can be obtained, and when the debt is paid the lien, as to all the property not consumed in making the payment, is discharged and the proceeding is at an end. We see nothing inconsistent here requiring an election of remedies, and where there is no inconsistency there need be no election. 9 R. C. L. 958; *Rowell v. Smith*, 123 Wis. 510, 102 N. W. 1; *Moody v. Travis*, 76 Ga. 832, and *Itasca Cedar & Tie Co. v. Brainerd Lumber & Mercantile Co.*, 109 Minn. 120, 123 N. W. 58.

The judgment of the trial court is right and must be and is hereby affirmed.

PARKER, C. J., FULLERTON, and MITCHELL, JJ., concur.

BRIDGES, J. (concurring)—This case has given me no little trouble because of two conflicting ideas; first, that if the legislature intended by § 1149, Rem. Code (P. C. § 9737), to give the lien therein mentioned to one performing labor in the felling of timber and converting it into logs, why did it not expressly say so by adding "logging company" to the expression, "sawmill, lumber or timber company"? Everyone in this state knows that one working in the woods is a logger, and that the business of a logging company is the felling of timber and cutting it into logs. The other conflicting idea is, why should the legislature give this additional lien and relief to one manufacturing lumber out of logs and refuse to give it to one manufacturing logs out of felled timber, and thus, apparently without reason, show a preference for one class of labor over the other?

I have concluded, however, that the legislature by this act intended to give the extra lien and relief to a person engaged in what is commonly known in this state as logging. The opinion of Judge Tolman lays stress on the words "timber company", and concludes that those words include a logging company. To my mind the words "lumber company" much more nearly embrace the idea of a logging company. If we look entirely to the local use of the words "lumber company", it may be questionable whether the idea of logging is included within them. But generally in the United States the word "lumbering" means logging, as distinguished from converting the logs into the finished product. Webster's International Dictionary defines lumbering as "the business of cutting or getting timber or logs from the forest for lumber", and the word "lumber", used as a verb, as "to cut logs in the forest or prepare timber for market", and "lumberer" as one "employed in lumbering, cutting and getting logs from the forest for lumber." If, therefore, the words "lumber company", used in the statute, are given their broad meaning, they easily include the felling of trees in the forest and converting them into logs. I therefore concur in the opinion of Judge Tolman.