428 P.2d 955

**M. & I. TIMBER COMPANY, a Montana Corporation, Plaintiff-Respondent, Cross-Appellant,**

v.

**HOPE SILVER–LEAD MINES, INC., Defendant-Appellant, Cross-Respondent.**

**No. 9904.**

Supreme Court of Idaho.

June 12, 1967.

Thomas A. Mitchell, Coeur d'Alene, for appellant.

Stephen Bistline, Sandpoint, for appellee.

SMITH, Justice.

Plaintiff-respondent (cross-appellant), hereinafter referred to as the plaintiff, brought this action to quiet title to the timber on certain land situate in Bonner County, Idaho, admittedly owned in all other respects by defendant-appellant (cross-respondent), hereinafter referred to as the defendant. Defendant, by its answer, denied plaintiff's alleged ownership of the timber, and counter-claimed for the value of timber which plaintiff harvested from the lands during 1962. After the pleadings had been filed and both parties had moved for summary judgment, counsel stipulated that the case be decided as a matter of law solely on the pleadings, a set of stipulated facts, exhibits attached to plaintiff's motion for summary judgment, and the deposition of Donald J. Diehl, plaintiff's vice-president.

The trial court denied the motions of both parties for summary judgment. It thereupon entered findings of fact and conclusions of law, followed by its judgment and decree quieting title in plaintiff to all the standing timber on the land "including the right and privilege of removing the same at any time in perpetuity," but adjudging defendant to be the owner of the balance of the estate in the lands involved; and adjudging that plaintiff be required to tender into court for defendant's use and benefit the amount of money, with interest which defendant had paid as taxes by reason of assessed valuation of the timber on the lands. Defendant appealed and plaintiff cross-appealed from the judgment.

Defendant assigns error of the trial court in concluding and decreeing that as to the lands involved all timber was reserved in perpetuity in plaintiff, including all timber which might grow upon the land at all times in the future, i.e., in perpetuity.

Plaintiff assigns error of the trial court in imposing upon plaintiff the obligation to reimburse defendant for any moneys which it had paid out as taxes on the standing timber.

The facts are hereinafter briefly related.

On June 24, 1947, defendant acquired title to the land involved, by deed of conveyance from one Albert Nash and wife, which contained the following reservation:

"Said parties of the first part [Nashes] reserving to themselves, their heirs, executors, administrators, or assigns, however the right and privilege to remove any and all timber from any and all of the above described tracts of land, without any obligation of any kind, nature or

description to the said party of the second part herein."

This provision was also mentioned in the granting and habendum clauses of the deed.

In July 1954, Nashes quitclaimed to Nash Industries, Inc., "all that certain standing timber, together with the right and privilege of removing the same at any time after date thereof." The same phraseology was used two years later (January, 1956) when Nash Industries transferred to Idaho Land & Development Co., all its right, title and interest in the timber. Idaho Land & Development Co. later, in October 1956, executed a "timber deed" quitclaiming to plaintiff all "its right, title and interest in and to all that certain standing timber, and the right and privilege of removing the same" on the lands involved. Plaintiff now claims ownership of the timber through this latter instrument.

Defendant has paid all the taxes assessed against the real property since 1947, even though I.C. § 63–317 provides that growing or standing timber be taxed separately from the rest of the property if the ownership is in different hands.

The Diehl deposition shows that Nashes and Nash Industries, Inc., had harvested almost all the marketable timber from the land before the timber rights were transferred to Idaho Land & Development Co. in 1956; that plaintiff did harvest some timber in 1962, but that there was not enough marketable timber left on the lands after 1962 to make it economically profitable to harvest any thereafter. Diehl testified that the present value of the timber rights could only be based on future growth that would produce marketable timber in 20 years at the earliest, and possibly in 50 to 75 years; and that plaintiff's main reason for harvesting in 1962 was to afford the young timber a chance to grow more quickly.

The trial court quieted title to the timber in plaintiff, ruling that the wording of the reservation "necessitated the sole possible conclusion" that the reservation of the timber carried with it the perpetual right of removal, as follows:

"* * * there being no restriction as to time of removal, and the reservation being not merely to the grantors in said instrument, but to 'their heirs, executors, administrators or assigns,' and the nature of the reservation being qualified further by the statement that it was without any obligation of any kind to the owner of the balance of the estate in the land involved, being the very antithesis of any limitation, necessitating the sole possible conclusion of law that the reservation of the timber carried with it the perpetual right of removal."

Both parties recognize the rule stated in Leuthold v. Davis, 56 Wash.2d 710, 355 P.2d 6, 7–8 (1960):

"By an unbroken line of decisions, the law is that, when an owner sells timber and conveys the same by deed, commonly called 'cutting rights,' if the conveyance fixes a time within which the timber must be removed, and the timber is not removed within such period, the ownership of the timber reverts to the grantor. [citation] If no time is specified in the deed or reservation a reasonable time for removal is implied in light of the surrounding circumstances; if the timber is not seasonably removed, the timber will revert and the grantee will lose his cutting rights. [citations]

"However if the deed clearly manifests an intention that the sale or reservation of timber is in perpetuity, then the party who purchases or reserves the timber by such a deed has a perpetual right to remove it. [citations]"

■ The trial court correctly decided that the reservation clearly indicated an intent to put no time limit on the right to remove timber; but the trial court erred in quieting title to the timber in plaintiff. Nowhere in the original deed is there language reserving title to the timber in Nash; all that was reserved was the "right and privilege to remove any and all timber" from the land. That language did not reserve in Nash the title to the timber but merely reserved to him a profit a prendre

defined by the terms of the grant or reservation. McLemore v. Knott Coal Corp., 203 Ky. 833, 263 S.W. 365 (1924); Kennedy Stave and Cooperage Co. v. Sloss-Sheffield Steel & I. Co., 137 Ala. 401, 34 So. 372 (1903); 28 C.J.S. Easements § 3, p. 632; 25 Am.Jur.2d, Easements & Licenses, § 4, p. 420. 1 Thompson, Real Property, § 135, at p. 509.

> "A profit a prendre, also called 'right of common' is a right exercised by one person in the soil of another, accompanied with participation in the profits of the soil, or a right to take a part of the soil or produce of the land. It is therefore distinguishable from an easement, since one of the features of an easement is the absence of all right to participate in the profits of the soil charged with it. A profit a prendre is similar to an easement, however, in that it is an interest in land. It cannot be created by parol but is created by grant, and may be either appurtenant to other land or in gross. If enjoyed by reason of holding certain other estate, it is regarded as appurtenant to that estate and may not be severed therefrom. On the other hand, if it belongs to an individual distinct from any ownership of other lands, it takes the character of an estate in the land itself and is assignable or inheritable." 25 Am.Jur.2d, Easements and Licenses, § 4, pp. 419–420.

See also 1 Thompson, Real Property, §§ 135–140.

■■ The owner of a profit a prendre, even in "any and all" the timber on the land, does not possess the same rights he would have as owner of the timber, unless the grant clearly intends otherwise; Thompson, Real Property, § 136, at p. 519; Gray v. Handy, 349 Mass. 438, 208 N.E.2d 829, 832 (1965). The owner of the timber, subject to the profit a prendre, ordinarily has the unlimited right to use and dispose of the timber as he sees fit until the owner of the profit a prendre chooses to harvest it. Kennedy Stave & Cooperage Co. v. Sloss-Sheffield Steel & I. Co., supra, 34 So. at 375, 1 Thompson, Real Property, § 136, at

p. 519; Sutherland v. Heathcote, [1892] 1 Ch. 475.

Defendant cites United States Coal & Oil Co. v. Harrison, 71 W.Va. 217, 76 S.E. 346, 47 L.R.A.,N.S., 870 (1912), in support of its appeal as authority in deciding the case at bar. In that case grantors conveyed land subject to the following reservation:

> "And the [grantor] also reserves to himself and to his said wife the privileges of selling and removing any timber from said land that they may desire to sell or to use, and also the right of way through said lands to remove the same."

The language in that reservation is quite similar to the language in the case at bar except that Nash reserved to himself, his heirs and assigns, *"the right* and privilege to remove *any and all* timber."* (Emphasis supplied.) In the Harrison case the West Virginia court held that:

> " * * * the reservation amounts to no more than a personal covenant, extending a privilege, personal to the grantors, and not assignable to third persons, who might under the influence of motives not contemplated, proceed to take all the timber, or an undue amount thereof, and in a reckless and injurious manner. They reserved no interest in the land, except right of ingress and egress to remove such timber as they should cut or cause to be cut—a mere incident of the license." 76 S.E. at 346.

■ Moreover, both parties in the case at bar concede that the timber right is assignable. Further, it is clear that more than a mere personal privilege was intended to be reserved herein since the *right* to *any and all* timber was reserved. The evidence also clearly shows that the motives of plaintiff were identical to Nashes when they reserved the timber rights. They both contemplated a commercial logging operation.

Defendant also cites the cases cited in the annotation accompanying the Harrison case, viz., 47 L.R.A.,N.S., at 877, for the proposition that a mere license was created. Most of those cases involved purported

grants or reservations that could not qualify as profits a prendre since they failed to comply with the statute of frauds.

Since Nashes *did not have title to* the timber when they subsequently purported to convey the same, plaintiff and its successors in interest could not acquire good title thereto. All plaintiff ever owned was a profit a prendre to cut "any and all timber" from defendant's lands.

In interpreting a "timber deed" in which the grantor had conveyed "all of the timber and logs" on a parcel of land, the Oregon Supreme Court in Arbogast v. Pilot Rock Lumber Co., 215 Or. 579, 336 P.2d 329, 72 A.L.R.2d 712 (1959), was faced with determining what was usually meant by the word "timber" in conveyances of interests in timber.

> "In the absence of modifying terms or expressions in the instrument or a construction peculiar to the locality, the general rule within the lumber industry is that the word 'timber' denotes trees of a size suitable for manufacture into lumber for use in building and allied purposes. It does not, however, include saplings, brush, fruit trees or trees suitable only for firewood or decoration. Anderson v. Miami Lbr. Co., 59 Or. 149, 155, 116 P. 1056; Cooley v. Meridian Lumber Co., 1940, 195 La. 631, 197 So. 255, 259; Crain v. Hoefling, 1942, 56 Cal.App.2d 396, 132 P.2d 882, 886; Holly Hill Lumber Co. v. Grooms, 1941, 198 S.C. 118, 16 S.E.2d 816, 819; Alcutt v. Lakin, 33 N.H. 507, 509; Kaul v. Weed, 203 Pa. 586, 53 A. 489, 491; Falk, Timber and Forest Products Law (1958), 71, § 112; 34 Am.Jur. 493, Logs and Timber, § 2; 54 C.J.S. Logs and Logging § 1, p. 672; Kinney, Essentials of American Timber Law, 14, § 23. See also Calmer v. Day, 1922, 118 Wash. 276, 203 P. 71, 72; Annotations appearing at 91 A.L.R. 1462 et seq." 336 P.2d at 332, 72 A.L.R. 2d at 720.

In the case at bar there is nothing to indicate that a different interpretation of the word "timber" was intended by the parties; in fact, Nashes' evident purpose in retaining the so-called timber rights was to harvest the timber or cause it to be harvested by Nash Industries, Inc. That purpose suggests that Nashes intended the interpretation, as announced by Oregon's Supreme Court in the Arbogast case, to be applied to the "timber," when they made the reservation in the deed.

The next issue to be decided is whether the reservation included timber that has become and will become such after 1947 when Nashes executed the deed, or whether the reservation was only intended to afford the right to cut timber that was in existence as timber in 1947. The reservation itself is silent on this point; therefore, we must look to authority extraneous to the reservation, again to decide such issue. A case bearing upon such issue appears to be Doherty v. Harris Pine Mills, Inc., 211 Or. 378, 315 P.2d 566 (1957). That case announced the rule that where there is no specific provision in the instrument of conveyance establishing the time for determining the size of the timber conveyed it is to be determined *as of the date of the execution of the contract.* That rule is also followed in Arbogast v. Pilot Rock Lumber Co., supra; see also Crain v. Hoefling, 56 Cal.App.2d 596, 132 P.2d 882 (1942); Hawkins v. Duvall, 108 Misc. 333, 177 N.Y.S. 584 (1919); Huron Land Co. v. Davidson, 131 Mich. 86, 90 N.W. 1034 (1902); and authorities cited in Doherty v. Harris Pine Mills, Inc., supra, 315 P.2d at 588. Those are 34 Am. Jur. 504, Logs and Timber, § 22; 54 C.J.S. Logs and Logging § 17b, p. 696; Kinney, Essentials of American Timber Law, § 120, p. 156; Moore v. Knott Co., Ky., 273 S.W.2d 842 (1954); Cool v. Blackburn, 291 Ky. 393, 164 S.W.2d 946 (1942); Polley v. Ford, 190 Ky. 579, 227 S.W. 1007 (1921); Overby v. Burnham, 190 Miss. 435, 200 So. 591 (1941); Robertson v. H. Weston Lumber Co., 124 Miss. 606, 87 So. 120 (1921); Miller-Brent Lumber Co. v. Dillard, 201 Ala. 18, 75 So. 308 (1917);

Wright v. Bentley Lumber Co., 186 Ala. 616, 65 So. 353 (1914); Griffin v. Anderson Tully Co., 91 Ark. 292, 121 S.W. 297 (1909); Union Bag & Paper Corp. v. Mitchell, 177 F.2d 909 (5th Cir. 1949); Holly Hill Lumber Co. v. Grooms, 198 S.C. 118, 16 S.E.2d 816 (1941); Warren v. Short, 119 N.C. 39, 25 S.E. 704 (1896); Cooley v. Meridian Lumber Co., 195 La. 631, 197 So. 255 (1940).

▪ Thus, Nashes reserved only the right to cut all trees suitable for manufacture into lumber for use in building and allied purposes as of the time of the 1947 conveyance.

▪ That plaintiff cannot claim future growth is further shown by the fact that the conveyances in its chain of title, beginning with that from the Nashes to Nash Industries, Inc., only purport to convey "all that certain standing timber." "Standing timber" has been interpreted to mean "timber *now* standing," or in this case the timber standing at the time of the conveyance by Nashes to Nash Industries, Inc., in 1954. Bragg v. Newton, 98 Vt. 102, 126 A. 494 (1924). Thus if the Nashes had possessed the right to harvest any growth subsequent to 1947, they did not transfer the right to future growth when they conveyed their rights in the "standing timber" in 1954.

As to the price paid by Idaho Land & Development Co., plaintiff's predecessor, for the timber rights, Mr. Diehl testified:

"It was offered at 'X' dollars, and I thought we couldn't lose. Mr. Nash needed some money, and that's why I purchased it."

Mr. Diehl's deposition clearly shows that, aside from a few isolated trees, there is now no standing timber on the lands involved suitable for manufacture into lumber for use in building and allied purposes. Mr. Diehl testified that it will not be economically practical to harvest the land for at least 20 years. The evidence shows that plaintiff's right to enter the land and cut timber has lapsed for all practical purposes

because of the almost entire removal of timber in being as of 1947. The trial court's judgment, quieting title in plaintiff to the timber must be reversed and title to the real property quieted in defendant, subject to plaintiff's profit a prendre to remove any and all timber that was in existence as of 1947.

The trial court further found:

"'It would be inequitable for the plaintiff corporation [M & I Timber Company] to gain the benefit of any taxes which may have been assessed against the timber on the land involved, and which taxes would then have been paid by the defendant corporation, [Hope Silver-Lead Mines, Inc.] and in equity and good conscience, the plaintiff corporation should tender into the Court within ten days from date of judgment to be entered herein, its offer to reimburse the defendant corporation for that amount of money, with 6% per annum interest, on any portion of the taxes paid by the defendant corporation which are proven to have been assessed against the properties involved by virtue of the value of the timber thereon, and that, should the plaintiff corporation decline to do so, the Court will then, of its own motion, grant a new trial, and consider the entry of a different judgment.'" (Conclusions of Law, Tr. p. 58)

▪ Since plaintiff timber company and its predecessors never had title to the timber involved, ownership of the same was never separate from the remainder of the land. Hence, plaintiff is not, legally or equitably obligated to pay back taxes attributable to the timber, in the absence of an agreement to pay the same. Thus, the portion of the judgment requiring plaintiff to pay back taxes also must be reversed.

▪ Defendant on the appeal does not mention its counterclaim, nor assign as error the trial court's failure to grant relief thereon. For such reason this court will not review the trial court's refusal to grant relief on the counterclaim. State

**644**

ex rel. Haworth v. Berntsen, 68 Idaho 539, 200 P.2d 1007 (1948); Coeur d'Alene Lead Co. v. Kingsbury, 56 Idaho 475, 55 P.2d 1307 (1936).

The judgment is reversed. Costs to defendant-appellant.

McQUADE, MCFADDEN and SPEAR, JJ., and DONALDSON, D. J., concur.