715 P.2d 935

**OAKLEY VALLEY STONE, INC., a corporation, Plaintiff-Respondent,**

v.

**James ALASTRA, Luis Alastra, Ynes Maria Kelly, Marie Kelly Howze, Irene Kelly, James P. Kelly, Jr., Defendants-Appellants.**

No. 16039.

Supreme Court of Idaho.

Dec. 30, 1985.

Rehearing Denied March 17, 1986.

---

Edward L. Benoit, of Benoit, Alexander & Sinclair, Twin Falls, for defendants-appellants.

Lloyd J. Webb, of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiff-respondent.

DONALDSON, Chief Justice.

The appellants, collectively referred to as the Alastras, are the record owners of approximately 3,000 acres of land located in the South Hills, south of Oakley, Idaho. The property has been leased for grazing purposes for a number of years. Since 1956, the respondent, Oakley Valley Stone, Inc. (Oakley), has been engaged in mining quartzite from a 160-acre parcel of land. Until June 6, 1980, Oakley was under the mistaken belief that the entire parcel was public land. However, in actuality, only 40

acres is public land, with the remaining 120 acres belonging to the Alastras.

The Alastras were unaware that Oakley was mining on their land until June 5, 1980, when the Bureau of Land Management advised Ynes Maria Kelly of that fact. On June 6, Kelly informed Oakley that it was trespassing on the Alastras' land and would have to "get off."

Thereafter, on June 20, 1980, Oakley initiated this action seeking title to the tract on an adverse possession theory. The Alastras counterclaimed seeking an injunction and damages. On July 16, the Alastras moved for partial summary judgment on the issue of adverse possession. The district court granted the motion, holding that the fact that Oakley had never paid taxes on the property was fatal to its claim for adverse possession.

Oakley then moved to amend its complaint to present the issue of its right to an easement in gross, a *profit a prendre,* to mine the land. The district court granted the motion and scheduled the matter for a court trial on November 9, 1981. The scope of litigation was limited to the following three issues: (1) whether Oakley had acquired a *profit a prendre* in the Alastras' property to mine quartzite; (2) whether Oakley had acquired a prescriptive easement to cross the Alastras' land in order to reach the public land; and (3) the Alastras' counterclaim for an injunction and damages.

Following two days of trial, the court entered judgment granting Oakley a permanent right, on a *profit a prendre* theory, to mine quartzite from the Alastras' land and dismissing the Alastras' counterclaim. The court also held that Oakley had established a right to an easement across the Alastras' land for access to its mining claims located on adjacent public land.

The Alastras appealed and the case was assigned to the Court of Appeals. In an opinion dated December 31, 1984, the Court of Appeals affirmed the portion of the judgment quieting title in the property to the Alastras and reversed the portion awarding Oakley an easement for *profit a prendre.* The court then remanded the case for determination of the Alastras' counterclaim.

On January 18, 1985, Oakley petitioned the Court of Appeals for rehearing. The court denied the petition, issuing a superseding opinion on April 18, 1985, 108 Idaho 322, 698 P.2d 840 (App.). In that opinion, the Court stated that a right of *profit a prendre* by prescription exists only as a matter of judicial policy, and held that the facts of the instant case did not merit the application of such a policy. The Court did, however, affirm the trial court's grant of an access easement across the Alastras' land to Oakley. Oakley then petitioned this Court for review of the Court of Appeals' decision.

The question before us on review is whether Oakley is entitled to a *profit a prendre* to mine quartzite on the Alastras' property. While we do not agree with the Court of Appeals' analysis of the nature of a right of *profit a prendre,* we do not agree with their conclusion that Oakley is not entitled to such a right.

■ A *profit a prendre* "is a right exercised by one person in the soil of another, accompanied with participation in the profits of the soil, or a right to take a part of the soil or produce of the land." *M. & I. Timber Co. v. Hope Silver-Lead Mines, Inc.,* 91 Idaho 638, 641, 428 P.2d 955, 958 (1967). It is distinguishable from an easement in that one of the features of an easement is the absence of any right to participate in the profits of the soil charged with it. *Id.*

■ A *profit a prendre* may be either appurtenant or in gross. A right of *profit a prendre* which exists independently of any ownership of land by the claimant is a *profit a prendre* in gross. Examples include the exclusive right to remove timber, or to hunt and fish on another's land. A *profit a prendre* in gross is in the nature of an estate in land and is assignable and inheritable. 1 G. Thompson, Commentaries on the Modern Law of Real Property, the Law of Real Property § 136 (1980). It is a

personal privilege which does not pass with the transfer of any land. Rather, it exists as an individual interest or ownership in the land itself.

■ In the present case, Oakley is claiming that it is entitled to a prescriptive right in the nature of a *profit a prendre* in gross, to mine quartzite from the Alastra property. A *profit a prendre*, like an easement, is by definition a nonpossessory interest. The essential element for acquiring such a prescriptive right is use of the privilege without actual possession of the land. In cases where the claimant is in complete possession, the doctrine of adverse possession rather than prescription applies. Prescription and adverse possession are established in a similar manner. Adverse possession may be defined as the actual, open, notorious, hostile, continuous, and exclusive "possession" of another's land, while prescription is the actual, open, notorious, hostile, continuous and exclusive "use" of that land. *See* R. Cunningham, W. Stoebuck and D. Whitman, The Law of Property §§ 8.7, 11.7 (1984).

■ The most basic distinction between the two doctrines is the distinction between "possession" and "use." As was stated above, in prescription cases the essential element is use of the privilege claimed for the statutory period without actual possession. In contrast, the doctrine of adverse possession refers to acquisition of a possessory interest in the land and, if proved, results in the transfer of legal title to the adverse claimant. In addition, a party claiming legal title on an adverse possession theory must establish that it has paid all the taxes levied and assessed on the property for the five-year statutory period. I.C. § 5–210.

■ In the instant case, Oakley originally claimed title to the disputed property on an adverse possession theory. The district court granted summary judgment to the Alastras on that issue because Oakley had not paid the taxes on the property as required by § 5–210. Oakley then amended its complaint seeking a prescriptive right to

continue mining the land. Although Oakley was granted only a prescriptive right to mine quartzite, the record in this case suggests that Oakley was, in fact, exercising a substantial possessory interest in the land. Rather than a mere burden, Oakley's use and occupation of the Alastra property more closely resembled complete dominion and possession and was, therefore, inconsistent with a prescriptive right.

Oakley is conducting a large scale mining operation on the Alastras' property. The operation currently produces between 1,000 and 1,200 tons of salable stone per year and employs between 5 and 10 miners. Oakley has placed housing on one area of the Alastras' property and has heavy equipment scattered throughout the property. It has expanded the existing roads and built new ones.

The testimony at trial identified 4 basic quarries, three of which are located on the Alastra property. In addition to the specific quarries Oakley has gathered "floatstone"—stone which is not part of a solid formation—throughout the entire 120-acre tract belonging to the Alastras. The quarries consist of open excavation areas from which the overburden—the surface of the land—has been removed. The overburden is removed through a "scalping" process. Heavy equipment is used to literally pick up and push away the earth. Next, the unusable stone is broken up and removed by a process of blasting and drilling. Finally, the commercial stone is removed by hand.

In our view, a mining operation of this size and character amounts to nearly a complete taking of the land and is inconsistent with a prescriptive claim. We agree with the statement of the Montana Supreme Court that

"[w]here a prescriptive right to a servitude has the effect of leaving the owner with an empty fee title, the situation is not one of prescriptive right in the form of an easement. It has ripened into a claim for adverse possession. All of the requirements of adverse possession must then be met, including payment of tax-

es." *Burlingame v. Marjerrison,* 665 P.2d 1136, 1140 (Mont.1983).

 It is undisputed that Oakley has not paid the requisite taxes on the Alastra property. One cannot gain title to land by adverse possession without paying the taxes for the full statutory period. I.C. § 5–210; *Stout v. Westover,* 106 Idaho 533, 681 P.2d 1008 (1984). Nor can one acquire a prescriptive right to property which in effect usurps the ownership of a fee title without paying the taxes thereon. *Burlingame, supra* at 1140; *Platt v. Pietras,* 382 So.2d 414 (Fla.App.1980). Because Oakley has effectively usurped ownership of the property without paying the requisite taxes, it is not entitled to a *profit a prendre* to remove quartzite from the Alastras' land.

Accordingly, that portion of the district court's judgment granting Oakley a *profit a prendre* is reversed. The portion of the judgment quieting title to the property in the Alastras is affirmed as is the award to Oakley of an easement to travel across the Alastra property to reach its mining claims located on public land. The case is remanded to the district court for determination of the Alastras' counterclaim for injunctive relief and damages based on tresspass.

Costs to Alastras.

No attorney fees on review.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in result.