Harriet L. HAGAN and Charles
T. Blaisdell, Plaintiffs,

v.

DELAWARE ANGLERS' & GUNNERS'
CLUB, Defendant.

C.A. No. 7989.

Court of Chancery of Delaware,
New Castle County.

Submitted: Oct. 27, 1994.
Decided: March 6, 1995.

Charles T. Blaisdell, pro se.

John H. Benge, Jr. of Allmond, Eastburn & Benge, Wilmington, for defendant.

### MEMORANDUM OPINION

BERGER, Justice.*

This is an action brought by plaintiffs, Harriet L. Hagan and Charles T. Blaisdell,[1] to enforce their alleged right to fish in Shallcross Lake. Defendant, Delaware Anglers' and Gunners' Club, is a Delaware corporation that owns the land under the lake, as well as certain of the property surrounding it. Plaintiffs claim that they are entitled to fish in the lake on either of two grounds. First, they say that the lake is open to the public because the creek that was dammed up to form the lake was a navigable body of water. Alternatively, plaintiffs claim the benefit of a reservation of rights included in the original deed pursuant to which defendant obtained title to the lake. Defendant, in its counterclaim, alleges that it has acquired the exclusive right to use the lake by adverse possession. After considering the evidence presented at trial, I conclude that there is no public right to use Shallcross Lake and that plaintiffs did not acquire any fishing rights through their deeds. Accordingly, judgment will be entered in favor of defendant.

### I.

Many of the relevant facts and certain conclusions of law were discussed in this Court's two previous opinions, and will be repeated here only to the extent necessary to an understanding of the remaining issues. See Hagan v. Delaware Anglers' & Gunners' Club, Del.Ch., C.A. No. 7989, Berger, V.C., 1988 WL 606 (January 5, 1988) (Hagan I); Hagan and Blaisdell v. Delaware Anglers' & Gunners' Club, Del.Ch., C.A. No. 7989, Berger, V.C., 1992 WL 82369 (April 22, 1992) (Hagan II). Shallcross Lake was formed as a mill pond in the mid–1700's, by the erection of a dam on a branch of Drawyers Creek. The lake is fed by springs, rainfall, water run off from adjacent lands, and two small streams. In 1921, defendant purchased the lake and other land from Mary E. Shallcross for use as a private hunting and fishing club. Plaintiffs own property near the lake and their chain of title traces back to Mary E. Shallcross.

### II.

With respect to plaintiffs' first claim, this Court previously ruled that the test is whether Drawyers Creek was navigable in fact, not whether the waters in that creek were tidal. See Hagan I. Navigability generally means that the waters "are used, or susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on the water." Hagan I (quoting The Daniel Ball, 77 U.S. (10 Wall) 557, 563, 19 L.Ed. 999 (1870)). "The legal concept of navigability embraces both public and private interests, and cannot be determined by a formula which fits every type of [waterway] under all circumstances at all times." Tonkins v. Monarch Building Materials Corporation, Mo.Supr., 347 S.W.2d 152, 156 (1961); United States v. Appalachian Electric Power Company, 311 U.S. 377, 424, 61 S.Ct. 291, 307, 85 L.Ed. 243 (1940).

The determination as to navigability rests on the facts and circumstances particular to each case. Factors to be considered include physical characteristics of the waterway, such as size and depth; the manner and extent of actual use of the waterway; and the ease or difficulty of navigation, including, but not limited to, the existence of any serious impediments to navigation. See United States v. Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931); Internal Improvement Trust Fund v. Florida Public Utilities Company, Fla.Dist.Ct.App., 599 So.2d 1356 (1992); Kansas v. Hays, 246 Kan. 99, 785 P.2d 1356 (1990). Lack of commercial traffic does not preclude a finding of navigability; it is merely a factor to be considered in deter-

---

* Sitting by designation pursuant to Del. Const. art. IV, § 13(2).

1. This case was originally filed by William A. Hagan and Harriet L. Hagan. Following Mr. and Mrs. Hagan's divorce, Mr. Hagan was deleted as a party-plaintiff and Charles T. Blaisdell was substituted.

mining the manner and extent of the waterway's usage. *Guste v. Two O'Clock Bayou Land Company,* La.Ct.App., 365 So.2d 1174, 1177 (1978); *cf. Tulou v. Anderson,* Del.Ch., C.A. No. 1483, Steele, V.C., 1994 WL 374311 (June 20, 1994) (holding that more than mere private, not-for-profit recreational use of a body of water must be shown before that body of water may be deemed navigable pursuant to a statutory provision [7 Del.C. § 7202], which specifically defines navigable water as that which is "used for the transport of useful commerce").

At trial, the parties presented expert and fact witnesses who testified about (1) the probable condition of Shallcross Lake absent the dam; (2) the current characteristics of the lake and discharge stream; and (3) the condition of the lake in 1947 after the dam broke. Dr. William F. Ritter ("Ritter"), defendant's expert, opined that if the dam were removed, the area that is presently Shallcross Lake would become a wetland area with a small stream flowing through it. Ritter testified that the stream would have a depth of only a few feet and would be incapable of supporting any vessels. Both Ritter and another defense expert, Jeffrey Bross, testified that the existing discharge stream is wider and deeper that it would have been in its natural condition because of erosion. Charles Miller ("Miller"), plaintiffs' expert, testified that the discharge stream is tidal and that, without the dam, there would be a narrow channel through the area now covered by the lake. Miller did not opine on the depth of the channel, but testified that the waterway likely would be able to support a canoe or row boat.

Both sides presented evidence concerning the present condition of the lake and discharge stream and how they are used. Victor Trietley ("Trietley") described several trips he made down Drawyers Creek and its tributaries. Trietley said that there were trees blocking the creek as he approached Shallcross Lake, and, as a result, he could not motor up to the dam in his boat. However, Trietley testified that, by tilting the outboard motor out of the water, he was able to float his boat over the obstruction. Trietley

testified that he and his friends used this area for recreation.

Edwin Shallcross ("Shallcross"), the 103–year–old son of Mary E. Shallcross, provided some historical background through videotaped testimony. Shallcross testified that his family never used the discharge stream to transport goods from the mill. He could only recall one occasion when he and his brother used the discharge stream for boating. They were unable to bring the boat closer than 500 yards to the dam. Finally, Ann Buchanan and Jeanette McDonnal testified about the condition of the lake and stream after the dam washed out in 1947. Both witnesses said that there was only a small, shallow stream in the area where the lake had been.

■ After considering the testimony and other evidence presented, I conclude that neither the Shallcross Lake discharge stream nor the waterway that would exist if there were no dam, is navigable in fact. The discharge stream is only a few feet deep and is wholly or partially blocked by tree stumps and fallen branches. Trietley's description of his journey upstream confirms that the discharge stream cannot support even the shallowest draft motorboat. Trietley had to lift his motor out of the water and float the boat over one of the many obstructions in the stream.

■ On the question of whether the stream would be navigable without the dam, I again conclude that the answer is no. The experts agree that, if there were no dam, there would be a small stream in the area now covered by Shallcross Lake. Plaintiffs' expert thought that the stream would support a small row boat or canoe. Defendant's experts opined that the stream and surrounding land would become wetlands through the natural process of eutrophication. Their opinions are supported by the fact that the area surrounding the Thomas Gristmill, which is located on another tributary of Drawyers Creek, is primarily mud and marshland. The opinions of defendant's experts, together with the evidence relating to the dam washout, convincingly establish that the waterway that would exist if there were no dam would not be navigable in fact.

## III.

With respect to plaintiffs' claimed deed rights, the question is whether the reservation of fishing rights by Mary Shallcross was appurtenant or in gross. *See Hagan II.* If the profit a prendre is appurtenant, it passes automatically with the property; if it is in gross, it is a personal right and will not automatically pass with the property. Whether a profit is "appurtenant or in gross is controlled mainly by the nature of the right and the intention of the parties creating it, and must be determined by the fair interpretation of the grant or reservation creating [it], aided if necessary by the situation of the property and the surrounding circumstances." 28 C.J.S. *Easements* § 4 (1941); *Dean v. Riley,* 31 Conn.App. 87, 623 A.2d 521, 523 (1993). Where a profit a prendre exists independent of claimant's ownership of land, as in the case where one is granted the exclusive right to remove timber or hunt and fish on the property of another, it is generally a profit in gross. *Oakley Valley Stone, Inc. v. Alastra,* 110 Idaho 265, 715 P.2d 935, 937 (1985). Here, plaintiffs offered no evidence to suggest that the parties intended Mary Shallcross's reservation of fishing rights to pass with her property. Shallcross testified that there was no discussion of fishing rights when he and his brother sold the property following his mother's death. There was also nothing in Mary Shallcross's estate filings to suggest that she viewed the fishing rights as an asset capable of being transferred. Based upon the foregoing, I conclude that the reservation of fishing rights in Mary Shallcross's deed was a profit a prendre in gross that did not convey any rights to successive landowners.

## IV.

Having found that Shallcross Lake is not navigable in fact and that plaintiffs have no fishing rights by virtue of their deeds, I need not reach defendant's counterclaim based upon adverse possession. Judgment is entered in favor of defendant.

**IT IS SO ORDERED.**